564 F.2d 615
 Walter UNTERMEYER, Jr., Plaintiff, Appellant,
v.
FIDELITY DAILY INCOME TRUST, Edward C. Johnson 3rd, Caleb
Loring, Jr., George K. McKenzie, William R.
Spaulding, and Fidelity Management &
Research Company, Defendants, Appellees.
 No. 77-1323.
 United States Court of Appeals,
First Circuit.
 Argued Oct. 4, 1977.
Decided Nov. 2, 1977.
 
 Sidney B. Silverman, New York City, with whom Silverman & Harnes, New York City, Robert J. Sherer and Roche, Carens & DeGiacomo, Boston, Mass., were on brief, for plaintiff, appellant.
 Sumner H. Babcock, Boston, Mass., with whom, E. Susan Garsh and Bingham, Dana & Gould, Boston, Mass. were on brief, for George K. McKenzie and William R. Spaulding, defendants, appellees.
 Peter M. Saparoff, Boston, Mass., with whom Gaston, Snow & Ely, Bartlett, Boston, Mass., was on brief, for Fidelity Daily Income Trust, defendant, appellee.
 James S. Dittmar, Boston, Mass., with whom Carol Goodman and Goodwin, Procter & Hoar, Boston, Mass., were on brief, for Edward C. Johnson 3rd, Caleb Loring, Jr., and Fidelity Management & Research Co., defendants, appellees.
 Before ALDRICH and CAMPBELL, Circuit Judges, and CRARY,* District judge.
 ALDRICH, Senior Circuit Judge.
 
 
 1
 In this minority shareholder's suit against a mutual fund, its four trustees, and its corporate investment adviser, alleging a pricing policy for new shares that resulted in their being sold for less than their true worth, defendants moved to dismiss for plaintiff's failure to have made a prior demand upon the trustee defendants. Assertedly, selling new shares below their true worth not only diluted the interest of existing shareholders, to plaintiff's detriment, but, by artificially increasing sales, improperly augmented the income of the fund's investment adviser, to the benefit of two of the fund's four trustees, who were the adviser's principal stockholders. Without finally deciding that the issues are so limited, we are presently attracted how deeply we do not intimate by only one of the reasons, or excuses, assigned in the complaint for excusing demand, viz., that demand would be futile because there is no majority of outside, or independent, trustees. This factor concerned the district court, too, and it early inquired. Taking the record most favorably to the defendants, they replied by offering to stipulate that had a demand been made the interested trustees would have disqualified themselves from voting. It may be deduced that this satisfied the district court. It does not satisfy us. Whatever factors there may be in the total circumstances indicating futility of demand, they cannot be nullified, or diminished retrospectively by an offer to stipulate.
 
 
 2
 Prior to the filing of the motion to dismiss, plaintiff had filed a motion for leave to file an amended complaint. Since he had already amended once as of right, this was a discretionary motion. This proposed amendment introduced new matter, as to which, allegedly, no demand on the trustees had to be made. However, at least arguably, the amendment still contained claims which left this issue alive.
 
 
 3
 When a hearing took place, plaintiff sought to present his motion to amend, but the court, stating that one of its few prerogatives was to determine the order of procedure, ruled that it would consider the motion to dismiss first. "I am only dealing now with the original (amended) complaint." Thereafter, it granted the motion to dismiss on the ground that this complaint asserted no adequate reason for excusing demand, and entered a judgment of dismissal without making reference to the motion to amend.
 
 
 4
 Entirely reasonably, in light of this background, plaintiff sought to learn whether the judgment was intended to deny the motion to amend, sub silentio, or whether the court considered plaintiff's opportunity to press that motion as still open. A conference was sought and arranged, but postponed, and when finally held the only communication was that the court felt that the motion is not open at present, in view of plaintiff's having taken an appeal. The court expressly refrained from expressing an opinion whether it might become open at a later date.
 
 
 5
 This is an unhappy situation. As time passed without the conference taking place, plaintiff could not afford not to take an appeal. While the question apparently has not arisen before in this Circuit, we could not question the well reasoned opinion in Asher v. Harrington, 7 Cir., 1972, 461 F.2d 890, holding that a judgment of dismissal containing no express reservation has the effect of denying all pending motions. Nonetheless, on this record, it would be reasonable to believe the court did not recognize this principle. We find in the brief for the so-called insider trustees, a statement that counsel for all parties, and the court itself, "have all indicated an understanding that the district court had not yet ruled on the motion for leave to amend." With respect to the court's subjective feeling, we express no opinion, but no counsel at oral argument voiced disagreement. Under these circumstances, the question is what should be done.
 
 
 6
 An appeal, with exceptions not presently pertinent, can only be from a final judgment. One thing indisputably clear is that the position of the insider trustees at oral argument, that there is now before us the motion to dismiss, but not the motion to amend, is untenable. If the motion to amend has not been disposed of, there is no final judgment. Either we have both matters before us, or we lack jurisdiction altogether.
 
 
 7
 For reasons already given, the judgment may well not have been intended to be final even though it plainly was final on its face. The possibly undesirable consequences of the appeal were not plaintiff's fault. Whatever may be the extent of the prerogatives possessed by the district court, they should not include opacity; litigants must be able to know where they stand. In these circumstances, and in the exercise of our general powers, in fairness to the parties we retain jurisdiction pro tem, but remand to the district court, with the following instructions. Within 30 days, or such further time as the district court may, by its order, provide, the district court may revoke the judgment for the defendants, letting stand its order dismissing the first amended complaint, but expressly leaving open the motion to amend further. Coincidentally, in that event, our jurisdiction shall terminate, and the district court shall thereafter proceed to rule on such motion. Alternatively, the district court shall enter an order simply reasserting the present judgment for the defendants. In this event, upon being informed thereof, we will proceed to consider plaintiff's present appeal, reading the judgment as including a denial of the motion to amend.
 
 
 8
 For the benefit of the bar, we remark that this is an unusual situation, based upon demonstrated extraneous circumstances, and our decision is not to be taken as a precedent for liberal questioning of judgments in the ordinary course.
 
 
 
 *
 Of the Central District of California, sitting by designation