Walter UNTERMEYER, Jr., Plaintiff, Appellant,

v.

FIDELITY DAILY INCOME TRUST et al., Defendants, Appellees.

No. 77–1323.

United States Court of Appeals, First Circuit.

Argued June 6, 1978.

Decided Aug. 2, 1978.

Sidney B. Silverman, New York City, with whom Silverman & Harnes, New York City, Robert J. Sherer, and Roche, Carens & DeGiacomo, Boston, Mass., were on brief, for plaintiff, appellant.

Arthur L. Liman, New York City, with whom Ronald W. Meister, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, James S. Dittmar, Carol Goodman, Jeffrey C. Bates, and Goodwin, Procter & Hoar, Boston, Mass., were on brief, for defendants, appellees Edward C. Johnson, 3rd, Caleb Loring, Jr., and Fidelity Management & Research Co.

Sumner H. Babcock, Boston, Mass., with whom E. Susan Garsh, and Bingham, Dana & Gould, Boston, Mass., were on brief, for defendants, appellees McKenzie and Spaulding.

Peter M. Saparoff, Boston, Mass., with whom Gaston, Snow & Ely Bartlett, Boston, Mass., was on brief, for defendant, appellee Fidelity Daily Income Trust.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

ALDRICH, Senior Circuit Judge.

After an inconclusive start, see *Untermeyer v. Fidelity Daily Income Trust*, 1 Cir., 1977, 564 F.2d 615, where we found we lacked jurisdiction, we now face squarely the district court's ruling that plaintiff, a minority shareholder of a mutual fund, had not alleged an adequate excuse for failure to make a demand upon the trustees of the fund before instituting this derivative action. Bringing suit under the Investment Company Act of 1940, 15 U.S.C. §§ 80a–1 et seq. (1976), plaintiff alleges (1) that the fund's portfolio was valued at less than market value so as to increase sales for the benefit of the fund's investment adviser in violation of section 22(c), 15 U.S.C. § 80a–22(c) and SEC Rule 22c–1, 17 C.F.R. 270.-22c–1 (1977), promulgated thereunder; and (2) that the adviser was paid an excessive fee in violation of section 36, 15 U.S.C. § 80a–35. There were four trustees. Two were "interested," being the principal owners of the investment adviser. The other two had no interest in the adviser and, thus, for purposes of this appeal, we shall assume that they would qualify under the Act as disinterested trustees. See section 2(a)(19), 15 U.S.C. § 80a–2 (1976).

It is clear under our cases, which take a strict view, generally, of the requirement of prior demand, *Heit v. Baird*, 1 Cir., 1977, 567 F.2d 1157; *In re Kauffman Mutual Fund Actions*, 1 Cir., 1973, 479 F.2d 257, cert. denied, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107, that none of the allegations in the complaint would have offered sufficient excuse to satisfy F.R.Civ.P. 23.1, had there been two interested and three disinterested trustees.[1] It is equally clear that no demand would have been necessary had there been three interested and two disinterested trustees.[2] See, e. g., *Delaware & Hudson Co. v. Albany & Susquehanna R.R. Co.*, 1909, 213 U.S. 435, 443, 450–51, 29 S.Ct. 540, 53 L.Ed. 862; *Liboff v. Wolfson*, 5 Cir., 1971, 437 F.2d 121; *Levitt v. Johnson*, 1

1. We need not repeat the holdings of *Heit* and *Kauffman* which defendants, with some justification, assert that plaintiff persisted in ignoring in a number of aspects.

2. Even assuming that Massachusetts, rather than federal law should apply, *but see Levitt v. Johnson*, 1 Cir., 1964, 334 F.2d 815, 819–20, cert. denied, 379 U.S. 961, 85 S.Ct. 649, 13

L.Ed.2d 556, the broad principle of abstention by interested directors that defendants seek to draw from *American Discount Corp. v. Kaitz*, 1965, 348 Mass. 706, 206 N.E.2d 156, would totally change hitherto accepted law in this area. *See, e. g., Datz v. Keller*, 1964, 347 Mass. 766, 196 N.E.2d 922. We reject it.

Cir., 1964, 334 F.2d 815, 817, *cert. denied*, 379 U.S. 961, 85 S.Ct. 649, 13 L.Ed.2d 556; *Cathedral Estates, Inc. v. Taft Realty Corp.*, 2 Cir., 1955, 228 F.2d 85; *see also Kauffman*, ante, 479 F.2d at 264; *cf. Lasker v. Burks*, 2 Cir., 1978, 567 F.2d 1208. We know of no prior authority, however, where the board was evenly split.

The district court chose to equate an even division with cases where the disinterested directors were in the majority. While it recognized that the trustees, in the case of a demand, "might have deadlocked two to two," it held that it would be "unfounded speculation . . . to so assume." It said,

> "An evenly divided board presents greater opportunities for conciliation and compromise than exist when an interested majority controls. Confronting the threat of deadlock, one or more of the interested directors may abstain, or even vote to take action to remedy the alleged wrongdoing. If a tie vote does occur, it may be resolved through expansion of the board; or it may even lead, under certain circumstances, to initiation of the litigation by management." [Footnotes omitted.]

We must agree that such possibilities, and others envisaged by defendants in argument, exist. However, we cannot accept their claim that they are not speculative. The court's assertion, that it would be speculation to assume that they would not occur, put the shoe on the wrong foot. If we credit the court's assumption that interested directors might voluntarily renounce their deadlocking ability, it is only a matter of degree to suggest that even an interested majority might find it politic to abstain from voting, or even to approve instituting suit. The court's reasoning that "one or more of the interested trustees may abstain, or even vote to take action to remedy the alleged wrongdoing" would be applicable if they were in a majority as well as if they stood two to two, and would unsettle the whole doctrine.

While, as the district court recognized, there are strong policy reasons favoring a demand, as long as there are circumstances where demand is to be excused it is important that these be identifiable, both promptly, and with some certainty and simplicity, rather than require extensive subjective inquiry. In *Kauffman* we held that a plaintiff should not be permitted to explore the merits of his case in order to show himself excused from making demand, 479 F.2d at 266. The converse should follow. A defendant charged with self-benefiting misconduct, and who is affirmatively shown to be able to prevent the trust or corporation from suing him, should not be able to require the shareholder to prove, in addition, that he would not voluntarily relinquish his position of power.[3] We see no logical difference between the ability to deadlock a demand and the ability to vote it down.

Because of defendants' extended reliance upon the distinction made in *Kauffman* and *Heit* between actions that could, prima facie, serve a legitimate corporate purpose and those that could not, *see* 479 F.2d at 265; 567 F.2d at 1162, we note that this distinction was made for the purpose of determining whether a participating trustee was sufficiently unconnected, or "disinterested," to be presumptively responsive to demand, and not as a means of testing the substantive sufficiency of the complaint apart from that issue.

We do not pass on all the nuances of the present, first amended complaint, or of the proffered further amendment raising the excessiveness of the adviser's fee. The court was content to rest upon the defense of lack of demand in both instances. After so much time has been spent, we regard other possible objections to the pleadings as even less significant. The judgment of the district court is vacated. The court is directed to allow the requested amendment

---

**3.** It was in the interest of this needed prospective certainty that we rejected, even assuming their utmost good faith, the interested trustee defendants' offer, after commencement of the action, to stipulate to their willingness to abstain from voting. *See Untermeyer*, ante, 564 F.2d at 616.

and to permit plaintiff to proceed with the suit.