**MARQUIS THEATRE CORP., etc.,**
Plaintiff, Appellee,

v.

**CONDADO MINI CINEMA, et al.,**
Defendants, Appellees.

George Dennis, Defendant, Appellant.

Nos. 87–1367, 87–1478.

United States Court of Appeals,
First Circuit.

Heard Feb. 3, 1988.

Decided May 5, 1988.

Rehearing Denied June 21, 1988.

Philip E. Roberts, Hato Rey, P.R., for defendants, appellants.

Robert H. Rout, Lakeville, Conn., for plaintiff, appellee.

Before CAMPBELL, Chief Judge, TORRUELLA, Circuit Judge, and CAFFREY,* Senior District Judge.

TORRUELLA, Circuit Judge.

The present appeal crowns the protracted history of this shareholders' derivative action suit. The plaintiff filed suit in 1980. A one day bench trial took place in 1987. The district court entered judgment for the plaintiff, awarding her damages for self-dealing and corporate mismanagement, as well as attorneys' fees. The defendant below, Dennis,[1] argues on appeal that the court erred in striking his responsive pleadings under Fed.R.Civ.P. 37(b)(2)(C) and (D), and that the evidence presented warranted neither the finding of liability, nor the damages awarded. We disagree.

A brief sketch of the facts is in order, although additional relevant facts will sur-

---

* Of the District of Massachusetts, sitting by designation.

1. Throughout this opinion we will speak of Dennis as the defendant below, because he is the only appellant and, as sole owner of the other defendant corporations, the only natural person with a direct interest in the defense. Likewise, Ruth Herman, as the plaintiff Marquis Theatre Corp.'s sole shareholder, will be referred to as the plaintiff.

face during the later discussion. The plaintiff was a 22.5% stockholder in Condado Mini-Cinema. Dennis and his immediate family owned the rest of the shares. Dennis also owned several other corporations which he established in order to rent property to Condado Mini–Cinema, to supply it with movies, and to provide various other services. The plaintiff alleges that by thus dealing with himself in the provision of all these services to the mini theatre, Dennis was able to deprive Condado of any profits. She sued Dennis and the other corporations, therefore, to recover on behalf of the mini theatre the profits Condado would have had in the absence of Dennis' misconduct.

We address first the propriety of the district court's action under Rule 37(b)(2)(C) and (D). What the court did, essentially, was to strike the answer to the complaint about six weeks before trial. A defendant is deemed to have admitted all those allegations in the complaint which he does not deny. Fed.R.Civ.P. 8(d). Having stricken all the denials, therefore, the court was in the position to order a default judgment. *See, e.g.,* 4A *Moore* ¶ 37.03[2], at 37–83 to 37–84. Rather than doing so, however, it decided to allow the defendant to disprove plaintiff's case at trial, if he was so inclined. The effect, then, was somewhat less drastic than a default judgment or the dismissal of a complaint.

The basis for the Rule 37 sanction is perhaps not as clear as we would wish, but on examination of the record, we find no error. The case was initially filed in 1980. It took seven years to culminate in a one day bench trial. Some of the delay was undoubtedly caused by an earlier dismissal, appeal, and voluntary reinstatement, but most of it can be laid at the feet of the parties. The docket sheet, six pages long, counts 226 entries. Motions for additional time and for stays abound. Prominently featured are motions by the plaintiff to compel answers to interrogatories and to compel the production of documents.

These are the motions that actually form the basis for the sanctions. The court ordered the defendant to produce documents and to answer interrogatories on December 2, 1981, and December 24, 1981, respectively. Then, in an order dated March 20, 1984, the magistrate summarized defendant's conduct until that time:

To conclude, defendants' refusal to comply with the various orders of the Court to produce the documents requested by plaintiff, is outrageous. These defendants have been stalling for almost two years. The record shows various instances in which frivolous excuses have been given, and where evasive and dilatory tactics have been employed with no other intention than to avoid compliance with the orders given. Defendants are purposively delaying the final disposition of this case. Consequently, all of defendants' affirmative defenses are stricken from the record.

Notwithstanding this unambiguous note of disapproval, the defendant persisted in his refusal to cooperate. He never produced the documents, and he refused at all times to cooperate with the court in conducting the case. In fact, the district court found, and we cannot say that this is clearly erroneous, that the defendant was hiding from the court so that he could not be served with a summons to appear and testify. The court felt this was the *piece de resistance* in a long course of obstruction, delay, and disdain for the court's attempts to preside over a search for the truth in this case.

Defendant now makes two arguments, first, that the March 20, 1984 order relieved him of any further responsibility to comply with the earlier discovery orders, and, second, that defendant had a right to "make the plaintiff prove his case the best way he knew how," by refusing to appear and testify in court.

The first argument is incorrect. Any sanction—short of outright dismissal or default judgment—for failure to comply with a discovery order is intended to prompt a party to respond. As the Advisory Committee on Rules put it in the very first comment to this rule:

The provisions of this rule authorizing orders establishing facts or excluding ev-

idence or striking pleadings, or authorizing judgments of dismissal or default, for refusal to answer questions or permit inspection or otherwise make discovery, are in accord with *Hammond Packing Co. v. Arkansas,* 1909, 29 S.Ct. 370, 212 U.S. 322, 53 L.Ed. 530, 15 Ann.Cas. 645, which distinguishes between the justifiable use of such measures as a means of compelling the production of evidence, and their unjustifiable use, as in *Hovey v. Elliott,* 1897, 17 S.Ct. 841, 167 U.S. 409, 42 L.Ed. 215, for the mere purpose of punishing for contempt.

Fed.R.Civ.P. 37, Notes of Advisory Committee on Rules.

The appellant, Dennis, apparently believes that once he was sanctioned, on March 20, 1984, his debt to society was paid, and he was relieved of the obligation to produce the documents at issue. On the contrary, continuing to refuse to produce documents which the court unequivocally determined were in his possession and were necessary to the case simply compounded his initial wrongdoing.

The second argument, that he had a right not to appear at the trial, would not cause us to reverse, even if we were to credit it fully. Defendant's refusal to cooperate by appearing as a witness was merely one factor in the district court's decision, which was already warranted by his refusal to comply with discovery orders. The court, in fact, granted the order before trial when it did not know for sure whether or not Dennis would appear although Dennis' counsel stated that the defendant would not be present.

■ At any rate, it may well be true that in Puerto Rico a defendant need not appear voluntarily at his own trial.[2] However, the district court found that the defendant was hiding from the process server, with the admitted intent to prevent the plaintiff from obtaining information only the defendant possessed. That fact is what offends the court and the spirit of the rules of procedure. *See* Fed.R.Civ.P. 1. Defense counsel continues to boast of this strategy on appeal, despite the fact that it gained him nothing but sanctions and the assessment of costs and attorney's fees against his client. We cannot agree that a pigheaded refusal to cooperate is a legitimate trial tactic simply because the plaintiff at one point stated that she could not prove her case without information only the defendant possessed.

The defense would have done well to consider more carefully a case it brought to the attention of this court at oral argument, since it would have alerted him to the dangers of keeping from the court information which it requires:

The district court was entitled, as are we, to draw an adverse inference against the defendant for its failure to produce either pretrial or at trial [certain relevant earnings figures].

"When the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party which has prevented production did so out of the well-founded fear that the contents would harm him. Wigmore has asserted that nonproduction is not merely 'some' evidence, but is sufficient by itself to support an adverse inference even if no other evidence for the inference exists:

'The failure or refusal to produce a relevant document, or the destruction of it, is evidence *from which alone* its contents may be inferred to be unfavorable to the possessor, provided the opponent, when the identity of the document is disputed, first introduces some evidence tending to show that the document actually destroyed or withheld is the one as to whose contents it is desired to draw an inference.' 2 *Wigmore on Evidence* § 291, at 228 (Chadbourn rev. 1979) (emphasis added)."

---

**2.** We note, however, that the case cited by appellant for this proposition only deals with the proper inference to be drawn from a party's failure to present a witness that may materially advance its case, where that witness was not even listed as a possible witness. *See Viera v. Arizmendi,* 74 P.R.R. 36, 39 (1952).

*Knightsbridge Marketing v. Promociones y Proyectos*, 728 F.2d 572, 575 (1st Cir. 1984) (quoting *Nation–Wide Check Corporation, Inc. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 217–18 (1st Cir.1982)).

█ In this case Dennis failed to produce the documents that could have proved or disproved the allegations in the complaint. As a result, the effect of striking his answer to the complaint was nearly identical to simply drawing an adverse inference from his failure to produce those documents. The sanction applied by the district court was, therefore, eminently appropriate. In any event, our review is limited to the search for abuse of discretion: "The question, of course, is not ... whether the Court of Appeals would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing." *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976). The conduct which prompted the district court's decision in this case seems to be well within the intended scope of Rule 37, so that we cannot find an abuse of discretion.

█ The remaining contentions of this appeal are mainly evidentiary, challenging on factual grounds the district court's findings of damages and liability.[3] It is true that the court did not, as it could have, enter a default judgment against the defendant but said instead that plaintiff must still set out a prima facie case. At the same time, the court properly stated that any allegations in the complaint not denied or disproved at trial were taken to be admitted. We will therefore examine both the record of the trial and the allegations in the complaint to find support for each element of the cause of action.

The first shortcoming alleged by the appellant is the lack of the demand on the Board of Directors that is required before the institution of a shareholders' derivative action. Fed.R.Civ.P. 23.1. *See Heit v. Baird*, 567 F.2d 1157 (1st Cir.1977); *In re Kauffman Mutual Fund Actions*, 479 F.2d 257 (1st Cir.), *cert. denied*, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973).

█ Far from being a "rote and conclusory allegation," as appellant contends, plaintiff's explanation for her failure to demand that the Board of Directors take the desired action, is legally sufficient and fully supported by the facts. The complaint states:

16. No formal demand was made upon Dennis and CMC to bring this action because such a demand would be futile, pointless, an idle ceremony, and even absurd because at all relevant times mentioned herein:

(a) Dennis was the chief executive officer and he and his wife constituted the entire board of directors of CMC [Condado Mini–Cinema] (although illegally constituted under the General Corporation Laws of Puerto Rico); Dennis was thus in control of CMC and ran it and the other defendants as a single family business and his alter ego.

(b) Dennis, his wife and children were the majority stockholders of CMC (and the sole stockholders of the other defendant corporations) and without their consent and direction this action could not be brought by CMC.

(c) Dennis, his wife and children as well as the other defendants personally benefitted from and participated in the

---

**3.** While it is not labelled as one of the issues on appeal, appellant does mention in passing that he believes admission of the transcripts of his sworn testimony in a bankruptcy proceeding was error. His contention appears to be that the statements do not qualify under Fed.R.Evid. 801(d)(2) as admissions by a party-opponent because they were not against his interest either at the time he made them or at the time of the trial.

The rule requires, on its face, only that "[t]he statement is offered against a party and is (A)

the party's own statement in either an individual or a representative capacity...." The statements at issue clearly comply with these two requirements. A statement must be against the declarant's interest at the time it was made only when it is introduced as the hearsay exception found at Fed.R.Evid. 804(b)(3), not as an admission excluded from the definition of hearsay in Rule 801(d)(2). There was no error in admitting the transcripts into evidence.

illegal acts and conspiracy described herein.

(d) Dennis' misconduct alleged herein includes fraudulent self dealing, waste of corporate assets, mulcting and misappropriating of funds and assets, usurpation of corporate opportunities, and fraudulent and illegal issuance of stock, acts which under no circumstances could be ratified by the directors or stockholders of CMC.

Defendant himself cites a case in which we held that the demand requirement was excused where half of the members of the Board of Directors were interested parties. *Untermeyer v. Fidelity Daily Income Trust,* 580 F.2d 22 (1st Cir.1978). The demand would be clearly futile here, where the entire Board of Directors is interested, *see, id.* at 23, and authorities cited therein, and the acts as alleged in the complaint are of a nature sufficiently "undirected to a corporate purpose." *See Heit v. Baird,* at 1161; *Kauffmann,* at 257.

The substance of the offense is equally well supported. The plaintiff showed a pattern of transactions between Condado Mini–Cinema and other corporations in which defendant Dennis was sole shareholder. She also showed that Dennis paid large sums to himself for apparently personal expenses. The conflict of interest is evident, since Dennis was one of two members (with his wife) of Condado Mini–Cinema's Board of Directors; was, with his wife and children, majority shareholder in Condado Mini–Cinema; and owned the rest of the corporations that were supplying Condado Mini–Cinema with services and goods. Speaking of directors under these circumstances, the Supreme Court said:

Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein.

*Pepper v. Litton,* 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939).

An examination of the case law of Puerto Rico reveals no controlling cases. However, the law of corporations in this jurisdiction is closely patterned after Delaware corporate law, and the applicable principles are well established in Delaware jurisprudence:

Delaware cases state that the "business judgment" test is met when there is no showing of bad faith, negligence, or gross abuse of discretion, in contrast to the "intrinsic fairness test," *which, in self dealing situations, requires proof* that the defendant has acted with objective fairness.

H. Henn & J. Alexander, *Laws of Corporations,* § 242, p. 663 (3d Ed.1983) (emphasis added, footnotes omitted).

█ When the defendant declined to present any witnesses, and failed to prove that the transactions were fair, he failed to carry his burden of proof. The district court, therefore, correctly concluded that he had breached his fiduciary duties. His argument on appeal, that plaintiff did not prove the unfairness of the disputed transactions, demonstrates his abiding misapprehension of the relevant legal principles. Defense counsel would have done well not to substitute flippant phraseology and obstructive litigation for sound reasoning and thorough research.[4]

We note further that he cites not a single case regarding the standard to be applied in evaluating transactions involving self-dealing and instead attempts to rely on the "business judgment" rule. He does not even begin to answer plaintiff's arguments for application of the stricter rule quoted above, nor point out the considerations which determine the application of one or the other rule. We believe, on close examination, that appellant's bluster and the sarcasm he directs at the district court are merely intended to disguise the lack of a

---

**4.** Phrases like "damn the torpedoes" and "full speed ahead," as well as characterizing the court's actions as diatribes, spiteful acts, and acts of ill will, do nothing to clarify the legal issues involved and make more difficult careful consideration of the points raised on appeal.

coherent legal theory and the failure to introduce any favorable evidence at trial. This, of course, is hardly an excuse for the lack of appropriate deference and decorum owed by a party and his attorney to the court, even where egregious error is justifiably claimed and much more where it is lacking.

The appellant argues also that the record would not support the award of any damages. He argues that income tax returns for the Mini–Cinema show mostly losses, so the plaintiff, as 22.5% shareholder, somehow did not lose anything through Dennis' self-dealing and usurpation of corporate opportunities. The district court awarded the plaintiff 22.5% of "expected profits" in damages (since she was the 22.5% shareholder).[5] This method neatly redresses the harm the defendant caused by reassigning the profits of Mini–Cinema to his other corporations through self-dealing transactions.

■ Appellant claims, however, that there is no basis for not relying on the (non-existent) profits actually reflected in the income tax returns, and that there is no reason to accept the expert's testimony that profits should constitute about 20% of gross receipts. His first argument ignores the court's finding that he illegitimately kept Condado Mini–Cinema in the red by his mismanagement. His second argument ignores the fact that Dennis himself admitted in the transcripts of the bankruptcy proceedings (*see* footnote 3, *ante*) that expected profits from Condado Mini–Cinema "in a healthy corporate situation" should be "about 15–20%." In addition, the expert was testifying as an expert. Although she admitted little knowledge of expected profits in Puerto Rico specifically, the court could believe that her testimony referred to industry-wide expected profits, and not just New York figures. Finally, we repeat the statement we made in *Knightsbridge*, 728 F.2d at 575:

> [I]t ill behooves [the appellant] to complain about speculative evidence when it has admitted liability and refused to furnish the information that could have eliminated or greatly reduced any speculation. *See Lakota Girl Scout Council, Inc. v. Havey Fund–Raising Management, Inc.*, 519 F.2d 634, 642–43 (8th Cir.1975).

Here, the defendant refused to produce any evidence to refute this finding, and refused to produce documents that could have reduced it. There was no error in using the 20% figure.

Dennis also argues that the uncontradicted evidence at trial shows he was not a director for a period of one year from 1974 (not 1971 as appellant contends) to 1975. The complaint itself acknowledges that he was removed from positions of control while some litigation for control of Condado Mini–Cinema took place in Puerto Rico courts. Dennis, however, may well have retained de facto control of the corporation through family relations. Furthermore, the network of corporations he created and controlled continued to provide services to the Mini–Cinema, and may also have continued to milk all of that corporation's profits.

■ On the other hand, there is no evidence in the record to show that he contin-

---

5. Generally speaking, any recovery in a stockholder's derivative action suit belongs to the corporation. *See, e.g., Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970). Under some circumstances, however, the courts have allowed the direct compensation of minority shareholders on a *pro rata* basis, in proportion to their holdings in the corporation.

A pro rata recovery by shareholders has been permitted in three situations:

(a) Where the derivative action is against insiders who have misappropriated corporate assets; here an individual pro rata recovery prevents the funds from reverting to the control of the wrongdoers;

(b) Where there are both "innocent" and "guilty" shareholders; hence a pro rata recovery may be limited to the "innocent" ones;

(c) Where the corporation is no longer a going concern; here individual awards facilitate distribution of funds.

H. Henn and J. Alexander, *Laws of Corporations*, § 373, at 1097 (3d Ed.1983) (footnotes omitted). Since the parties do not contest the method used by the district court to award damages, we will assume one or more of the above exceptions is applicable here.

ued to be responsible for any corporate decisions. The record and the complaint fail to indicate even who ran the corporation during that time. Since this case is premised upon Dennis' responsibility *as a director*, we cannot say that Dennis was properly held responsible for any losses of the corporation occurring in the 1974–75 period. We reverse therefore, the court's award of damages for lost profits for that year, an amount of $10,851.36.[6] For the same reason, we reverse the award of damages for expenses paid to Dennis that year ($15,000); and for the maintenance fees on his condominium that the Mini–Cinema paid that year ($1,548).

■ Also lacking support in the record is the court's determination that Dennis had to return three quarters of the salary he was paid as chief executive officer of Condado Mini–Cinema. In that capacity, Dennis received $300.00 weekly. He carried out similar duties *without compensation* for three other corporations which he owned. The district court concluded from this that Dennis was paying himself from Condado Mini–Cinema's coffers, for all four jobs, in order to make the other three corporations more profitable and the Mini–Cinema less so.

While this reasoning has some appeal, we conclude it is erroneous. Mini–Cinema was paying Dennis for his work as an officer of the corporation. That does not mean that the corporation had exclusive rights to all of Dennis' time and services. Whatever Dennis did in his spare time is of no consequence to Condado Mini Cinema. No one alleges, nor does the evidence indicate, that Dennis was overpaid by a factor of four, or that his services were worth only $75.00 per week (one quarter of his $300.00 salary), and the district court was not warranted in so concluding. We reverse, therefore, the district court's order that Dennis return three quarters of his salary for nine years—$105,300—to Condado Mini–Cinema, and turn over 22.5% of that—$23,692—to the plaintiff.[7]

■ As a final measure, the district court awarded the plaintiff $48,000 in attorney's fees. The award was based on the court's equitable power to award, in its discretion, attorney's fees, when, as the court found here, "an unfounded ... defense is ... maintained in bad faith, vexatiously, wantonly, or for oppressive reasons." 6 *Moore's Federal Practice*, ¶ 54.78[3], at 54–499. *See Runyon v. McCrary*, 427 U.S. 160, 183–84, 96 S.Ct. 2586, 2600–01, 49 L.Ed.2d 415 (1976); *Hall v. Cole*, 412 U.S. 1, 4–5, 93 S.Ct. 1943, 1945–46, 36 L.Ed.2d 702 (1973).

From the result of this appeal, it is evident that the defense was not unfounded as to all of its particulars. The defendant's course of conduct in the litigation, *i.e.*, the way the defense was maintained, is another matter, however. We have previously held that attorney's fees may be awarded for obduracy even where the defense is not completely meritless. *See Wright v. Jackson*, 522 F.2d 955, 958 (4th Cir.1975) (citing *Marston v. American Employers Ins. Co.*, 439 F.2d 1035, 1042 (1st Cir.1971)).

> While the presence of merit in a claim or defense may well negate any notion of bad faith in its *filing*, it certainly cannot justify abuse of the judicial process in the *methodology* of its *prosecution*.

*Lipsig v. National Student Marketing Ass'n*, 663 F.2d 178, 182 (D.C.Cir.1980) (emphasis in original). The district court found that this abuse had taken place, and, in light of the extensive record, we cannot agree that its finding was clearly erroneous. Indeed, if the defense counsel's demeanor before this court and the denigratory and slighting attitude towards the district court evidenced by his brief is any evidence of his conduct below, the sanction comes as no surprise.

---

**6.** That sum represents 22.5% of $48,228.27 which is the 20% of projected gross income attributable to expected profits.

**7.** The rest of appellant's arguments concerning the insufficiency of the evidence are patently without merit, and deserve little, if any comment. We will say only that the court found

that the defendant could not justify having paid $15,000 of his own personal and travel expenses and other miscellaneous charges yearly, out of Condado Mini–Cinema's coffers. We have read the record and concur in the district court's conclusion.

The general rule is that when obduracy infects only parts of the trial and not the entire defense, the award "is only for the unnecessary effort occasioned by the obstinacy." *Wright v. Jackson*, 522 F.2d at 958 (citing *Carrillo v. Westbulk*, 514 F.2d 1214 (1st Cir.1975); *Gerstle v. Gamble–Skogmo, Inc.*, 478 F.2d 1281, 1309 (2d Cir.1973); *Marston v. American Employers Ins. Co.*, 439 F.2d 1035, 1042 (1st Cir.1971)). It is entirely possible, in view of this rule, that certain portions of the award are unjustified. As in *Carrillo v. Westbulk*, however, "[n]one of these questions is raised with respect to the award to the plaintiff in the case at bar, as defendants have objected only to the finding of obstinacy, not to the amount of the imposition." 514 F.2d at 1220. The fees award is affirmed, therefore, in its entirety.

In conclusion, we *affirm* the district court's finding of liability. We *reverse* the court's order to return a portion of Dennis' salary ($105,300) to Condado Mini–Cinema; and we *reverse* all the damages awarded the corporation ($64,776.27), and the plaintiff (22.5% of that award) for the year Dennis was not on the Board of Directors. We *affirm* the rest of the damages and we *affirm* the award of attorney's fees to the plaintiff.

Costs are granted to plaintiff.