**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John E. McGEE, Defendant–Appellant.**

No. 98–3063.

United States Court of Appeals,
Seventh Circuit.

Argued April 7, 1999.

Decided Sept. 1, 1999.

Rehearing Denied Oct. 13, 1999.

Paul Kanter (argued), Thomas P. Schneider, Office of the United States At-

torney, Milwaukee, WI, for Plaintiff–Appellee.

Mark S. Rosen (argued), Rosen & Holzman, Waukesha, WI, for Defendant–Appellant.

Before FLAUM, RIPPLE and ROVNER, Circuit Judges.

RIPPLE, Circuit Judge.

A jury found John Earl McGee guilty of one count of bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2. Mr. McGee appeals the judgment of conviction. He claims that the evidence presented at trial was insufficient to support a conviction; that the government's use of his accomplices' testimony, which was offered pursuant to their plea agreements, violated 18 U.S.C. § 201(c)(2); and that the district court erred in admitting under Federal Rule of Evidence 801(d)(2)(A) his statement to the police. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A. Facts

On January 27, 1998, a grand jury indicted John McGee on two counts of bank robbery. The first count charged Mr. McGee with robbing the North Shore Bank in Milwaukee, Wisconsin, on July 5, 1997; Count 2 charged him with robbing the Mutual Savings Bank in Milwaukee on July 28, 1997.[1] At trial, three witnesses who pleaded guilty to the July 5, 1997 robbery of the North Shore Bank testified against Mr. McGee. These three witnesses—Walter Williams ("Mr.Williams"), Natasha Williams ("Mrs.Williams"), and Bridget Womack—had promised, in their plea agreements, to cooperate fully with the government in its investigation and to testify truthfully if asked to testify. In

return, the government had agreed to advise the sentencing court of the extent of each defendant's cooperation and to move for downward departure if the defendant provided substantial assistance in the investigation or prosecution of others.

Mr. Williams testified to the following events. On July 5, 1997, Mr. Williams, Mr. McGee and Ms. Womack agreed to rob a bank and left the Williamses' house together in Ms. Womack's car. When they arrived at the North Shore Bank, Mr. McGee went inside to size up the bank while the other two waited in the car. When Mr. McGee returned, he told Ms. Womack to go to a teller named Barbara. Ms. Womack then went inside the bank while Mr. Williams and Mr. McGee waited in the car. When Ms. Womack returned with the money, Mr. Williams drove Ms. Womack and Mr. McGee back to the Williams residence, where they divided the money among the three of them.

Mrs. Williams gave the following testimony. She became friends with Ms. Womack after meeting her at a casino. Ms. Womack told Mrs. Williams that she had previously robbed banks, and Mrs. Williams agreed to assist Ms. Womack in future robberies. On July 5, 1997, Ms. Womack came to the Williams residence and asked Mrs. Williams if she would assist in a robbery, but Mrs. Williams declined because she was afraid. Mr. Williams, Mr. McGee, and Ms. Womack then left the house together. When they returned, Ms. Womack had a purse full of money, which Ms. Womack, Mr. Williams, and Mr. McGee divided among themselves. Mrs. Williams and Ms. Womack then went gambling together.

Ms. Womack testified to the following facts. She met Mrs. Williams while gambling and discussed robbing banks with her. Mrs. Williams eventually agreed to assist Ms. Womack in robbing banks.

---

1. Because Mr. McGee was acquitted of Count 2, only the facts related to Count 1 are re- counted here.

Through her friendship with Mrs. Williams, Ms. Womack met Mr. Williams. On July 5, 1997, after talking to Mr. Williams the night before about robbing a bank, Ms. Womack went to the Williams residence and picked up Mr. Williams and Mr. McGee, who suggested the North Shore Bank and indicated that he knew a teller there named Barbara. On the way to the bank, they stopped at a Walgreens, where Ms. Womack and Mr. McGee purchased bandanas. When they arrived at the North Shore Bank, Mr. McGee went inside to check things out. When he returned to the car, he described the inside of the bank and told Ms. Womack that Barbara was there. Ms. Womack then went inside, handed a note to the teller named Barbara, received the money, and then left the bank. When she returned to the car, Mr. Williams drove Ms. Womack and Mr. McGee back to the Williams residence, where Mr. McGee divided the money among the three of them. Ms. Womack and Mrs. Williams then went gambling.

The bank teller, Barbara Meservey, testified that, on July 5, 1997, a woman approached her window and handed her a note demanding money and stating that the robber had a gun. Meservey handed over the money, and the woman left the bank. Meservey also testified that she had observed a black male earlier in the day who looked suspicious because he was looking around at the walls and the security cameras.

The prosecution also called Detective Carl Buschmann of the Milwaukee Police Department to testify that he interviewed Mr. McGee on August 20, 1997, concerning the July 5 robbery of North Shore Bank. Detective Buschmann testified that, during the interview, Mr. McGee provided three different versions of the events of July 5, 1997. First, Mr. McGee said that he had taken a bus to the North Shore Bank that day to open an account but left the bank

when he was told he would need two forms of identification. After Mr. McGee was informed that co-defendants Natasha Williams and Bridget Womack had provided statements implicating him in the robbery, he admitted that he had lied about taking the bus and decided to change his story.

Mr. McGee then stated that Ms. Womack and Mr. Williams picked him up at his house on the morning of July 5, 1997, to go to an auto parts store. After they left the store, Mr. McGee asked Ms. Womack to stop at the North Shore Bank so he could open a free checking and savings account. Ms. Womack parked at a Blockbuster video store, and Mr. McGee went into the bank. After inquiring about an account, he was told he would need two forms of identification and $75, which he did not have, so he returned to the car. Ms. Womack moved the car to an alley behind the Blockbuster and said she had to run into the Blockbuster to pick up something. Instead of going into the Blockbuster, Ms. Womack went into the North Shore Bank. When she returned, she had money in her hand, and Mr. Williams drove them back to the Williams residence. There, Mr. McGee learned that Ms. Womack had robbed the bank.

Detective Buschmann testified that Mr. McGee then changed his story yet again. This time, Mr. McGee said that, after leaving the auto parts store, he asked Ms. Womack to drop him at the North Shore Bank. He went into the bank, and Ms. Womack and Mr. Williams drove away. Mr. McGee took the bus home. Later that evening, he talked to Mr. Williams on the phone, at which time he learned that Ms. Womack had robbed a bank. Mr. Williams did not indicate what bank, and Mr. McGee did not ask.

Detective Buschmann testified that Mr. McGee denied any involvement in the robbery and denied having any knowledge of the robbery.[2] Detective Buschmann fur-

---

**2.** Mr. McGee and Detective Buschmann then discussed the July 28, 1997 robbery of the

· Mutual Savings Bank.

ther testified that, in accordance with police procedure, at the conclusion of the interview he prepared a written version of Mr. McGee's statement. He read the statement to Mr. McGee and gave him the opportunity to make any additions or corrections. He then asked Mr. McGee to write that the statement was true and correct and to sign the statement. Mr. McGee asked Detective Buschmann to write "I have read and have [had] read to me the above statement and some of it is true." Mr. McGee then signed the statement.

Mr. McGee's brother and his mother both testified that Mr. McGee attended a barbeque at the family's home on July 5, 1997, and that he never left home that entire day.

**B. Proceedings in the District Court**

Prior to trial, Mr. McGee filed a motion in limine requesting exclusion of his August 20, 1997 statement to Detective Buschmann. He argued that his statement was inadmissible hearsay that did not qualify as an admission by a party-opponent because it was not inculpatory. Without deciding whether admissions by a party-opponent must be inculpatory, the district court denied the motion, holding that Mr. McGee's statement was inculpatory, or could be argued to be inculpatory, because it contained inconsistent versions of what happened on the day of the robbery.

After a three-day trial, a jury found Mr. McGee guilty of robbing the North Shore Bank on July 5, 1997 (Count 1), and found him not guilty of robbing the Mutual Savings Bank on July 28, 1997 (Count 2). Mr. McGee subsequently filed two motions for acquittal notwithstanding the verdict. In the first motion, he argued that the evidence at trial was insufficient to support the conviction because the witnesses were unbelievable. In the second, he argued that his co-conspirators' testimony was procured in violation of 18 U.S.C. § 201(c)(2). The district court denied both

motions, holding that witness credibility is uniquely a jury question and that the case relied on by Mr. McGee in his § 201(c)(2) argument is not the law in the Seventh Circuit. The court then imposed a sentence of 63 months in prison, 3 years of supervised release, $2,332 in restitution, and a $100 assessment.

**II**

**DISCUSSION**

**A. Sufficiency of the Evidence**

Mr. McGee appeals the denial of his motion for a judgment of acquittal on the ground that the evidence presented at trial was insufficient to support a conviction. In challenging the sufficiency of the evidence, Mr. McGee "faces a nearly insurmountable hurdle ... [in that] we consider the evidence in the light most favorable to the Government, defer to the credibility determination of the jury, and overturn a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Szarwark*, 168 F.3d 993, 995 (7th Cir. 1999) (quoting *United States v. Moore*, 115 F.3d 1348, 1363 (7th Cir.1997) (internal quotation marks and citations omitted)).

Mr. McGee's principal argument is that the testimony of Mr. Williams, Mrs. Williams, and Ms. Womack implicating him in the robbery of North Shore Bank is unworthy of belief; eliminating consideration of their testimony, he submits, leaves only his statement to Detective Buschmann, which he contends is insufficient to support the conviction because it completely denied involvement in the robbery. Mr. McGee argues that, because the jury acquitted him of Count 2, it necessarily must have rejected the credibility of Ms. Womack and Mrs. Williams, who testified to his guilt on that count as well as Count 1. Therefore, he submits, the testimony of Ms. Womack and Mrs. Williams is "not supporting evidence" of his guilt as to

Count 1. Appellant's Br. at 16. He further argues that Mr. Williams' testimony is unbelievable because he was a drug user, a bank robber, an adulterer, and an ex-convict who had a motive to lie in order to receive a more lenient sentence himself.

■ We cannot accept Mr. McGee's arguments. As we have made clear, it is not our role, when reviewing the sufficiency of the evidence, to second-guess a jury's credibility determinations. *See United States v. Griffin*, 84 F.3d 912, 927 (7th Cir.) ("It is for the jury—not the court of appeals—to judge the credibility of witnesses, and attacks on witness credibility are insufficient to sustain a challenge to the sufficiency of the evidence."), *cert. denied*, 519 U.S. 999, 117 S.Ct. 495, 136 L.Ed.2d 387 (1996); *United States v. Campbell*, 985 F.2d 341, 344 (7th Cir.1993) (stating that, in reviewing the sufficiency of the evidence, "[w]e will not reweigh the evidence or judge the credibility of witnesses. That is the role of the jury, not an appellate court." (citation omitted)).

■ We cannot accept Mr. McGee's contention that Ms. Womack's and Mrs. Williams' testimony is entitled to no weight just because the jury acquitted Mr. McGee of Count 2. We cannot know, nor is it our place to speculate, whether the jury decided to acquit Mr. McGee of Count 2 because it found the witnesses incredible or for some other reason. The jury may have concluded, for example, that the testimony was credible but did not establish all the necessary elements of the charge in Count 2; or the jury may have credited only certain portions of Ms. Womack's and Mrs. Williams' testimony, choosing to believe what they said about Mr. McGee's involvement in Count 1, but not what they said about his involvement in Count 2. Moreover, even if the jury discredited the entire testimony of Ms. Womack and Mrs. Williams, it may have credited the testimony of Mr. Williams, who testified as to Count 1, but not Count 2. It is simply not for us to say what or whom the jury should have believed. The testimony of Ms. Womack, Mrs. Williams, and Mr. Williams, along with Mr. McGee's statement to Detective Buschmann, when viewed in the light most favorable to the government, was sufficient to permit a rational trier of fact to conclude that Mr. McGee was an active and knowing participant in the robbery of the North Shore Bank on July 5, 1997.

### B.  18 U.S.C. § 201(c)(2)

■ Mr. McGee submits that the testimony of his three co-conspirators should have been suppressed because it was procured in violation of 18 U.S.C. § 201(c)(2).[3] Mr. McGee relies solely on *United States v. Singleton*, 144 F.3d 1343 (10th Cir.1998), in which a Tenth Circuit panel held that § 201(c)(2) applies to the United States government and that the government's promise of leniency to a witness in exchange for his testimony against a co-defendant violated the provision. *See id.* at 1351. However, the Tenth Circuit, sitting en banc, has vacated the ruling of the panel in Singleton and held that "18 U.S.C. § 201(c)(2) does not apply to the United States or an Assistant United States Attorney functioning within the official scope of the office." *United States v. Singleton*, 165 F.3d 1297, 1298 (10th Cir.) (en banc), *cert. denied*, —— U.S. ——, 119 S.Ct. 2371, 144 L.Ed.2d 775 (1999).

Moreover, Mr. McGee's contention runs counter to our longstanding holding in *United States v. Barrett*, 505 F.2d 1091 (7th Cir.1974), *cert. denied*, 421 U.S. 964, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975), that

**3.** Section 201(c)(2) of Title 18 provides:
Whoever ... directly or indirectly, gives, offers or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court ... shall be fined under this title or imprisoned for not more than two years, or both.
18 U.S.C. § 201(c)(2).

the government cannot violate 18 U.S.C. § 201(c)(2) [4] by promising to do something it is authorized by law to do.[5] *See Barrett,* 505 F.2d at 1102. As the United States points out, federal law permits a court, upon motion by the government, to reduce a defendant's sentence to reflect the defendant's substantial assistance in the prosecution of another person. *See* 18 U.S.C. § 3553(e) (Supp.1999); *see also* U.S. Sentencing Guidelines Manual § 5K1.1 (1998). Under *Barrett,* therefore, the government's promise to inform the sentencing judge of the extent of each witness' cooperation and to move for downward departure if the witness provided substantial assistance in the prosecution of Mr. McGee did not violate § 201(c)(2).

Mr. McGee has submitted no authority from this or any other circuit, other than the vacated panel opinion in *Singleton,* in support of his position on this issue. As we have made clear in other cases,[6] we decline to disturb the holding in *United States v. Barrett.*

## C. Admissibility of Admissions by a Party–Opponent

■ Federal Rule of Evidence 801 provides that admissions by a party-opponent do not constitute hearsay: "A statement is not hearsay if ... [t]he statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity...." Fed.R.Evid. 801(d)(2)(A). Relying on *United States v. Fleming,* 594 F.2d 598 (7th Cir.), *cert. denied,* 442 U.S. 931, 99 S.Ct. 2863, 61

L.Ed.2d 299 (1979), Mr. McGee contends that his statement to Detective Buschmann is not admissible under Rule 801(d)(2) as an admission by a party-opponent because it was not inculpatory.

We cannot accept this submission. Neither the Fleming case, nor any other Seventh Circuit case of which we are aware, establishes a requirement that admissions by a party-opponent be inculpatory in order to be admissible as nonhearsay under Rule 801.[7] Nor does the case law from the other circuits indicate that an admission must be inculpatory; the courts that have addressed the issue have held that, in accordance with the language of Rule 801(d)(2), the statement need only be made by the party against whom it is offered. *See United States v. Turner,* 995 F.2d 1357, 1363 (6th Cir.) ("On its face, Rule 801(d)(2) does not limit an admission to a statement against interest. Furthermore, this court has refused to place such a limited construction on the scope of an admission."), *cert. denied,* 510 U.S. 904, 114 S.Ct. 282, 126 L.Ed.2d 232 (1993); *Marquis Theatre Corp. v. Condado Mini Cinema,* 846 F.2d 86, 90 n. 3 (1st Cir.1988) (interpreting Rule 801(d)(2) on its face and rejecting the contention that admissions under Rule 801(d)(2) must be against interest either at the time the statement is made or at the time of trial); *Guam v. Ojeda,* 758 F.2d 403, 408 (9th Cir.1985) ("Cases interpreting section 801(d)(2)(A) are in agreement that statements need not be incriminating to be admissions." (citing

4. The *Barrett* case refers to 18 U.S.C. § 201(h), the identical predecessor to § 201(c)(2).

5. In *Barrett,* the defendant conceded that the government could grant criminal immunity in exchange for testimony but argued that a grant of statutorily unauthorized civil tax immunity would violate § 201(h). *See Barrett,* 505 F.2d at 1101. The court held that the grant of civil tax immunity was in fact authorized by federal law and therefore did not violate § 201(h). *See id.* at 1102.

6. *See United States v. Mitchell,* 178 F.3d 904, 909 (7th Cir.1999); *United States v. Condon,*

170 F.3d 687, 688–89 (7th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 1784, 143 L.Ed.2d 812 (1999).

7. The portion of the *Fleming* case cited by Mr. McGee decided only that the statements of two non-testifying co-defendants could not be admitted against the defendant in that case without violating the Confrontation Clause. *See Fleming,* 594 F.2d at 605. The court in no way addressed the requirements for the admissibility of statements as admissions by a party-opponent under Rule 801.

California state court cases)); *cf. United States v. Matlock*, 415 U.S. 164, 172 n. 8, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (interpreting the soon-to-be-enacted Federal Rule of Evidence 801(d)(2)(A) to require nothing more than a statement by a party offered against him at trial: "Rule 801(d)(2)(A) of the proposed Federal Rules of Evidence, approved by the Court on November 20, 1972, and transmitted to Congress, expressly provides that a party's own statements offered against him at trial are not hearsay."); *United States v. White*, 868 F.2d 305, 306 (8th Cir.1989) (requiring only that a statement be "offered against a party" and be "the party's own statement in either an individual or representative capacity"—the two explicit requirements in the language of Rule 801(d)(2)(A)—in order to be admissible as an admission by a party-opponent).[8]

Two well-known treatises on evidence also agree that admissions by party-opponents under Rule 801(d)(2) need not be inculpatory. *See* Kenneth S. Broun et al., McCormick on Evidence § 254, at 143 (John William Strong ed., 4th ed. 1992) ("A type of evidence with which admissions may be confused is evidence of declarations against interest. The latter, treated under a separate exception to the hearsay rule, must have been against the declarant's interest when made. No such requirement applies to admissions.... Of course, most admissions are actually against interest when made, but there is no such requirement." (footnote omitted));

Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 801.20[1]-[2], at 801-42 (Joseph M. McLaughlin, ed., 2d ed. 1999) ("Admissions by a party-opponent are usually contrary to a position that the declarant is taking at the trial in which it is introduced.... The party's statement need not have been against interest when made....").[9]

 We agree with the other circuits that Rule 801(d)(2)(A) should be interpreted on its face to require only a party's own statement offered against the party. We therefore reject Mr. McGee's contention that the district court erred in admitting his statement to Detective Buschmann. The district court's decision to admit the statement as an admission by a party-opponent is affirmed.

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

---

**8.** *See also United States v. Slone*, 833 F.2d 595, 601 (6th Cir.1987) (concluding that the defendant's statement to a grand jury was admissible under Rule 801(d)(2) even though it denied rather than admitted the facts that the prosecution was trying to prove); *United States v. Barletta*, 652 F.2d 218, 219 (1st Cir. 1981) ("[A] statement need not be inculpatory or against interest to be admissible under Rule 801(d)(2).") (citing *United States v. Matlock*, 415 U.S. 164, 172, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)).

**9.** Some courts have noted that an admission must be contrary to the trial position of the party against whom it is offered. *See United States v. Ferri*, 778 F.2d 985, 990 n. 3 (3d

Cir.1985), *cert. denied*, 476 U.S. 1172, 106 S.Ct. 2896, 90 L.Ed.2d 983 (1986); *O'Donnell v. Georgia Osteopathic Hosp., Inc.*, 748 F.2d 1543, 1547 n. 6 (11th Cir.1984), *overruled on other grounds by Lindsey v. American Cast Iron Pipe Co.*, 810 F.2d 1094 (11th Cir.1987). We understand this requirement to be simply a statement of the first of Rule 801(d)(2)'s required elements for an admission by a party opponent—that the statement be "offered *against* a party." Fed.R.Evid. 801(d)(2) (emphasis added). Even these cases did not require that the statement be against the declarant's interest at the time the statement was made.