**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William A. BARDSLEY,
Defendant–Appellant.**

No. 88–3256.

United States Court of Appeals,
Seventh Circuit.

Argued May 31, 1989.

Decided Sept. 12, 1989.

John F. Hoehner, Andrew Baker, Asst. U.S. Attys., Hammond, Ind., for plaintiff-appellee.

James W. Myers, III, Crown Point, Ind., for defendant-appellant.

Before CUMMINGS and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

William Bardsley was convicted in the Northern District of Indiana on three counts of a seven-count indictment charging that Bardsley had submitted documents containing false statements to the United States Postal Service in violation of 18 U.S.C. § 1001. The trial court withheld imposition of sentence for each of the three crimes and placed Bardsley on probation concurrently on all three crimes for a period of three years. As a condition of his probation, Bardsley was ordered to spend 120 days in a work release program and to make restitution to the Postal Service in the amount of $2500 within the probationary period. Bardsley appeals his conviction, arguing that certain items of evidence were improperly admitted, and that the evidence presented was insufficient to support the convictions. He also argues in cursory fashion that the district court should have given the jury a proposed instruction defining the reasonable doubt standard. We affirm.

## I. FACTS

Bardsley, the "accountable clerk" in the Valparaiso, Indiana post office,[1] was expe-

riencing financial difficulties. The government presented evidence establishing that on several occasions Bardsley failed to turn money collected from carriers who had delivered C.O.D. packages over to the finance clerk in accordance with standard operating procedure, but had kept the money for periods of time, and eventually turned in the money with falsified Form 3821s showing a later delivery. In effect, Bardsley used United States Postal Service monies for his own purposes. In carrying out this scheme, he made false entries on United States Postal Service forms numbered 3821 and 3822. The filing of these false documents constituted a violation of 18 U.S.C. § 1001.

Bardsley first came under suspicion of financial wrongdoing when Donald Skuderna, supervisor of delivery and collection for the Valparaiso, Indiana post office conducted an unannounced audit of his stamp account. Skuderna took inventory of all Bardsley's stamps and associated papers. Bardsley's account was audited in a separate room of the Post Office and found to be $138.88 short. Skuderna inquired of Bardsley if he might have overlooked anything. Bardsley replied that he would check. Shortly thereafter he returned with six rolls of stamps worth $22 each, a total of $132. Bardsley was charged with making false statements to a government agency in violation of 18 U.S.C. § 1001. Bardsley was not charged with any crime in connection with the audit, but testimony about the episode was presented at trial to establish Bardsley's poverty as a motive for making the false statements with which he was charged. The government present-

ed evidence that when Bardsley went to see if he had brought all his stamps into the room where the audit was being conducted, he had actually gone to another clerk's window out of Skuderna's view and bought the additional stamps with a check. The check was returned shortly thereafter by the bank for insufficient funds. Judy Skuderna, Donald Skuderna's wife and finance clerk at the post office, confronted Bardsley, who promised to make good on the check that same day. He did not do so. Judy Skuderna called Bardsley at home and told him that the postmaster wanted payment the next day. Judy Skuderna testified that Bardsley answered, "They know I'm broke, just what do they expect me to do?" Bardsley paid the amount due, plus a returned check charge, in small bills the next day.

The testimony at trial established that Bardsley's C.O.D. scheme was discovered when Judy Skuderna received an inquiry from the sender about a package when he failed to receive payment. She checked the C.O.D. book, and found that there was no entry of any disposition of the package. She asked Bardsley about the package, and a short time later Bardsley appeared with a duplicate C.O.D. tag, normally used only when the original tag is lost. Bardsley stated that he had forgotten to turn it in. Later that day, the C.O.D. book disappeared, but was found the next day in its normal place on Bardsley's desk. On the following day, November 5, 1987, Bardsley's day off, Judy Skuderna examined the C.O.D. book and found that there were thirty-two packages unaccounted for as to delivery or receipt of cash. At the Postmaster's direction, she made copies of the

1. When a C.O.D. parcel arrives at a post office from the sender (called the "seller"), it is given to the "accountable clerk," who records the parcel's identifying number, the amount of money to be collected, and the addressee of the parcel in a C.O.D. book. The accountable clerk then assigns the parcel for carrier delivery, making a notation on Form 3821. The carrier delivers ("sells") the package, collecting the money and tearing the C.O.D. tag off the parcel. The carrier and the customer sign for receipt of the package. The carrier then returns to the post office, where the accountable clerk takes the money and the signed receipt and "clears" the

carrier. In this process, both the carrier and the accountable clerk sign the Form 3821. The accountable clerk keeps the original Form 3821, and the carrier keeps a carbon copy. The accountable clerk then records the "sale" of the package in the C.O.D. book. At the end of the day, the accountable clerk takes all the Form 3821s and consolidates the information on Form 3822. He then takes the Form 3822, the Form 3821s, the C.O.D. tags, and the money collected to the post office finance clerk, who directs that money orders be prepared for the C.O.D. sellers.

C.O.D. book. One day after Bardsley's return, Skuderna checked the book again, and found that fourteen of the packages for which no disposition was shown were now marked as having been delivered and paid. Bardsley did not turn in an accounting reflecting delivery of those packages that day. The Postal Inspector was notified, and an investigation was conducted by Inspector Paul Durand.

The investigation discovered several Form 3821s which had Bardsley's signature or initials as the assigning employee, the delivering employee and the clearing employee. Inspector Durand asked Bardsley if he ever listed himself as the delivering employee. Bardsley answered that he would do so if a customer came to the back door of the post office and asked for a C.O.D. package.

Bardsley was charged with seven violations of 18 U.S.C. § 1001 for making false statements in documents relating to seven different C.O.D. packages. At the trial, which was held on September 26–28, 1988, there was testimony that each package was delivered by another employee, but that the Form 3821s presented by Bardsley to the Postal Service showed Bardsley as the delivering employee, and indicated delivery dates later than those on which the packages were actually delivered. Bardsley was found guilty by a jury in regard to three of the seven packages, and was acquitted of the charges in connection with the other four packages. The trial court withheld imposition of sentence for each of the three crimes and placed Bardsley on probation concurrently on all three crimes for a period of three years. As a condition of his probation, Bardsley was ordered to spend 120 days in a work release program and to make restitution to the Postal Service in the amount of $2500 within the probationary period. He appeals his conviction, and we affirm the judgment of the district court.

## II. EVIDENTIARY ISSUES

### A. The Returned Check

■ At trial, Bardsley objected to the introduction of testimony regarding the check he wrote to buy stamps at the time his stamp account was audited. He argues on appeal that this testimony was inadmissible under Fed.R.Evid. 404(b). We review the record to determine whether the district court abused its discretion in admitting that testimony over Bardsley's objection. *United States v. Perez*, 870 F.2d 1222, 1225 (7th Cir.1989). The standard for admission of evidence of uncharged misconduct is set out in *United States v. Monzon*, 869 F.2d 338, 344 (7th Cir.) *cert. denied* —— U.S. ——, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989). Initially, the evidence must be relevant to some issue other than the defendant's propensity to commit the crime charged. Second, there must be enough evidence of the uncharged act that a jury could find that "the act occurred and that the defendant was the actor." *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988). Last, the probative value of the evidence of uncharged acts must not be substantially outweighed by the danger of unfair prejudice.[2]

According to the government, the legitimate purpose of the evidence of the returned check was to show that Bardsley was having financial problems, which provided a motive to commit the crime. Motive is one of the acceptable purposes for admission listed in Fed.R.Evid. 404(b). Second, the evidence that the check was Bardsley's was convincing enough to meet the standard required—a copy of the check itself was offered into evidence, carrying Bardsley's handwriting—and is certainly adequate to meet the requirements of *Huddleston* and *Monzon*. Last, Bardsley has failed to demonstrate that the district court abused its discretion in finding that the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice. *United States v. Kel-*

---

**2.** Where evidence of past bad acts is offered to show intent to commit the act charged, it must also be shown that the uncharged act was similar enough in character and close enough in time to be relevant. *See United States v. Byrd*, 771 F.2d 215, 220 n. 1 (7th Cir.1985) (requirement is inappropriate where purpose of the evidence is to establish motive).

*ley,* 864 F.2d 569, 576 (7th Cir.1989). Evidence of the check certainly was probative of his financial condition, and this was probative of his motive to commit the crime. But it was never suggested to the jury that Bardsley was the type of person who would make false statements to a government agency simply because he was the type of person who would write a check without sufficient funds. We hold that there was no abuse of discretion in the admission of this evidence.

### B. Bardsley's Statement That He Was "Broke"

■ Bardsley argues that it was error to admit Judy Skuderna's testimony that Bardsley had said, "They know I'm broke, just what do they expect me to do?" He failed to raise an objection at trial to the admission of this testimony. Where no objection is raised at trial to the admission of evidence, our review is extremely deferential. We will reverse only for plain error, Fed.R.Crim.P. 52(b), which means error causing a miscarriage of justice. This "implies the conviction of one who but for the error probably would have been acquitted." *United States v. Smith,* 869 F.2d 348, 356 (7th Cir.1989), *quoting United States v. Silverstein,* 732 F.2d 1338, 1349 (7th Cir.1984), *cert. denied* 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985). There was other evidence of Bardsley's financial condition in the record (including the check we have just ruled was properly admitted in evidence). It was obviously not improper to allow evidence of a statement of a party-opponent, Fed.R.Evid. 801(d)(2)(A), and we are convinced that the admission of that evidence did not affect the trial so as to cause a conviction where there otherwise would have been an acquittal. The evidence that Bardsley did in fact submit documents containing false statements was substantial. Form 3821s listing Bardsley as the delivering employee were received in evidence, along with evidence that other

postal workers had actually made the deliveries and that the delivery dates were falsified. The admission of Bardsley's statement did not cause a "miscarriage of justice," *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985), and we hold that there was no plain error within the meaning of Fed.R.Crim.P. 52(b).

### C. Evidence of Bardsley's Bankruptcy

■ During the sidebar conference where the lawyers discussed the admissibility of the check, the U.S. Attorney mentioned that Bardsley had declared bankruptcy in July 1987, shortly before the investigations and the crimes charged. The jury was not privy to any of the discussions at the conference. The government did not introduce evidence of the bankruptcy before the jury. However, Bardsley mentioned his bankruptcy during his testimony on direct examination. On appeal, Bardsley complains that mention of the bankruptcy was prejudicial. Because Bardsley's own attorney elicited the mention and because there was no objection, we review this issue under the plain error standard of Fed.R.Crim.P. 52(b). We do not agree with the defendant's contention that he was harmed by the admission of testimony that he personally presented, and we specifically hold that admission of Bardsley's statement concerning his bankruptcy was not plain error within the meaning of Fed.R. Crim.P. 52(b).

## III. SUFFICIENCY OF THE EVIDENCE

■ "Section 1001 requires a knowing and willful intent in making a false statement." *United States v. Beck,* 615 F.2d 441, 453 (7th Cir.1980). Bardsley contends that the government did not present any proof of intent, and that the evidence was therefore insufficient to support the conviction.[3] In reviewing the sufficiency of the evidence, we decide whether, "viewing the evidence *and all reasonable inferences* in

---

**3.** Although Bardsley phrases his argument as an attack on the district court's denial of his motion for acquittal made at the conclusion of the government's case, that argument was effectively waived when Bardsley presented his own evidence. *United States v. Fearn,* 589 F.2d 1316, 1321 (7th Cir.1978); *United States v. Foster,* 783 F.2d 1082, 1085 (D.C.Cir.1986). Instead, we will treat the argument as directed against the evidence taken as a whole.

the light most favorable to the government, '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Goudy*, 792 F.2d 664, 674 (7th Cir.1986), *quoting United States v. Herrera*, 757 F.2d 144, 149 (7th Cir.1985) (emphasis added); *accord United States v. Teslim*, 869 F.2d 316, 325 (7th Cir.1989). It is not necessary that direct evidence be presented. "Criminal intent is often difficult to demonstrate by direct proof; it may be inferred from the attendant facts and circumstances." *United States v. Beck*, 615 F.2d 441, 449 (7th Cir.1980). The jury could have found that Bardsley intended to present materially false statements to a government agency by inference from the fact that making those statements allowed Bardsley to keep money properly belonging to the Post Office and to the C.O.D. sellers; and also from the fact that he gave the Postal Inspector a false story about why he was listed as delivering employee on the Form 3821s. This evidence in the record was sufficient to enable a reasonable jury to draw an inference beyond a reasonable doubt that Bardsley had intentionally submitted the documents containing the false statements to the Postal Service.

## IV. INSTRUCTION ON REASONABLE DOUBT

Bardsley has included a couple of pages in his brief under the heading, "The District Court Erred By Failing to Instruct the Jury in the Definition of Reasonable Doubt." An appreciable part of that space is devoted to conceding that this Circuit has held that such instructions should be withheld. *See United States v. Glass*, 846 F.2d 386, 387 (7th Cir.1988) ("Judges' and lawyers' attempts to inject other amorphous catch-phrases into the 'reasonable doubt' standard, such as 'matter of the highest importance,' only muddy the water"). There is no argument explaining why we should alter our position, but only a listing of decisions from other circuits which have reached different conclusions. Bardsley being cognizant of the line of precedent in this court concerning instructions defining the reasonable doubt standard states that

his purpose in raising the issue is not to alter this court's position, but to preserve the question for review in the United States Supreme Court. We are not persuaded that our position should be changed.

After reviewing the record, we are convinced that the evidence challenged was properly admitted, and that the evidence was more than sufficient to support the conviction and the judgment of the district court. The judgment is

AFFIRMED.