In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-3618, 99-3798

United States of America,

Plaintiff-Appellee,

v.

Dwayne Reed,

Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 92 CR 18--J.P. Stadtmueller, Chief Judge &
No. 98 CR 200--Rudolph T. Randa, Judge.

Argued May 12, 2000--Decided September 11, 2000

Before Ripple, Manion, and Williams Circuit Judges.

Williams, Circuit Judge.  Defendant Dwayne Reed
was charged with bank robbery under 18 U.S.C.
sec. 2113(a). During his first trial, Reed
testified, as did his co-defendant, Frank Simmons
("Simmons"), who was cooperating with the
government. That trial ended with a hung jury,
and the district judge declared a mistrial. Six
months later, Reed was retried and the jury
returned a guilty verdict. At the second trial,
having already been sentenced under his plea
agreement, Simmons, a principal witness in the
first trial, refused to testify. Reed also
decided not to testify a second time. The
district judge then admitted Simmons's testimony
from the first trial under an exception to the
hearsay rules, Federal Rule of Evidence
804(b)(1), which allows a party to present former
testimony from an unavailable declarant. The
district judge also admitted Reed's entire
testimony from the first trial as an admission by
a party opponent under Federal Rule of Evidence
801(d)(2)(A). After the jury's guilty verdict,
the district judge sentenced Reed to 240 months
in prison.

Reed now appeals, arguing that the district
court erred when it admitted Simmons's prior
testimony under Rule 804(b)(1) and in doing so
violated the Confrontation Clause of the

Constitution's Sixth Amendment, that it wrongly admitted Reed's entire testimony under Rule 801(d)(2)(A), and that the district judge should have given a more detailed jury instruction concerning the benefits Simmons received in exchange for his cooperation with the government. Because we find that the district judge ruled appropriately, we affirm.

I

A.  Simmons's Testimony

Not long after cooperating with the government and testifying at Reed's first trial, Simmons pleaded guilty and was sentenced. Once in jail, Simmons refused to continue cooperating with the government and declined to testify at Reed's second trial. The district judge admitted Simmons's testimony from Reed's first trial under the hearsay exception provided at Federal Rule of Evidence 804(b)(1)./1 Simmons's prior testimony was read by a government agent and Reed maintains that this lent Simmons's testimony more credibility than it was due. Now Reed argues that even though the government made no attempt to compel Simmons's presence, the trial judge found Simmons unavailable and admitted his testimony from Reed's first trial. We review the district judge's ruling on the admission of prior testimony for an abuse of discretion. United States v. Curry, 79 F.3d 1489, 1494 (7th Cir. 1996)./2

Under Rule 804(b)(1), once a declarant has been deemed unavailable, his former testimony may be admitted into evidence, as long as the party against whom the testimony is admitted had an opportunity and a similar motive to develop the testimony. According to Reed, Simmons was not really "unavailable" because the government procured Simmons's unavailability and that neither the government nor the court made any attempt to actually compel Simmons's testimony at the second trial. Specifically, Reed theorizes that the government purposely worked to ensure that Simmons would be sentenced before Reed's second trial so that it would lose any leverage it had to compel Simmons's continued cooperation. A review of the facts and the law suggests that the district judge's decision to admit Simmons's prior testimony was proper.

First, Simmons was unavailable. The definition of "unavailability" is provided in Federal Rule of Evidence 804(a)(1), which states that a declarant is unavailable if the declarant "persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so." However, Reed suggests that the government somehow

procured Simmons's unavailability. "A declarant is not unavailable as a witness if exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying." Fed. R. Evid. 804.

The government bears the responsibility of proving that Simmons was unavailable. See Burns v. Clusen, 798 F.2d 931, 937 (7th Cir. 1986). "If there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith may demand their effectuation." Id. (quoting Ohio v. Roberts, 448 U.S. 56, 74 (1980)). However, we have recognized that under Rule 804(a)(1) a testimonial privilege, such as the privilege against self-incrimination, is an independent ground of unavailability. See United States v. Kehm, 799 F.2d 354, 361 (7th Cir. 1986). Therefore, the rule is not that the government must do everything it can to get a witness to testify, only that it make a reasonable, good faith effort to get the witness into court. Furthermore, "'the lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness.'" Roberts, 448 U.S. at 74 (citing California v. Green, 399 U.S. 149, 189 & n.22 (1970)). "The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness." Id.

There is nothing in the record to suggest that the government acted in bad faith or sought to procure Simmons's unavailability. In fact, from the record, it appears that the government made a good faith effort to get Simmons to testify. The government located Simmons, brought him to court, and asked him to testify at the second trial. Simmons was called to the stand to testify, but he refused to do so. Even though the government offered him additional credit toward his sentence to re-testify, Simmons stood firm in his refusal. Reed argues that the government should have either prevented Simmons from being sentenced before Reed's second trial or threatened to move the court to set aside Simmons's plea agreement. Neither Rule 804 nor reasonableness required the government to exercise either one of these options.

Additionally, the district judge, not the government, retained control over the date and time of Simmons's sentencing. And while the government could have found Simmons in violation of his plea agreement, it is not clear what this would have accomplished./3 Reed asks this court to believe that if the government had threatened

Simmons with setting aside his plea agreement, this would have compelled Simmons to cooperate. This is pure speculation. Given that Simmons refused to testify despite the court's threatened sanctions, which could have resulted in the imposition of unknown penalties, it seems unlikely that he would have succumbed to the government's threats.

The district judge attempted to compel Simmons's testimony as well. Simmons was already in jail, and while a criminal contempt finding may not have posed a very serious threat to him, it was the court's only option. The court warned Simmons that if he refused to testify, he could be subjected to civil and criminal contempt, for which the penalty could include jail time./4 Simmons still refused to testify. Contrary to what Reed thinks, neither the government nor the court ultimately controlled Simmons's situation. Simmons made it clear that he would rather give up the possibility of a reduced sentence, be held in criminal contempt, and face the possibility of additional jail time, than testify for the government at Reed's second trial. The only weapons the government had available to it, in its attempt to compel Simmons's testimony, were the threat of more jail time or the possibility of less. It used one of those weapons and good faith requires nothing more.

Second, during the first trial Reed had ample opportunity to cross-examine Simmons and to impeach his credibility, and during the second trial he had the same motive to examine Simmons as he did during the first trial. Reed maintains that he did not have a similar motive to develop Simmons's testimony during the second trial since Simmons pled guilty and was sentenced between the first and second trial. Before a court can admit prior testimony under Rule 804(b)(1), it must find that the adverse party has a similar motive to develop the testimony by direct, cross, or redirect examination as it did when the testimony was originally given. Id. at 385. When considering whether this requirement has been met, courts look to the similarity of issues and the purpose for which testimony was given. Id. "Circumstances or factors which influence motive to develop testimony include '(1) the type of proceeding in which the testimony [was] given, (2) trial strategy, (3) the potential penalties or financial stakes, and (4) the number of issues and parties.'" Id. (citation omitted).

At the first trial, (1) Simmons testified and was cross-examined by Reed's counsel; (2) Reed's principal strategy was to impeach Simmons's credibility and to establish Reed's alibi; and (3) Reed was being tried for bank robbery and was

subject to imprisonment. While the second trial initially included charges against a third co-defendant, the parties and issues remained essentially the same as during the first trial. The fact that Simmons was actually sentenced and received a downward departure after the first trial, does not really change Reed's motives on cross. Simmons had entered into the plea agreement well before the first trial and Reed knew that Simmons would be getting a substantial reduction in his sentence in exchange for his cooperation. He used this information to impeach Simmons on cross-examination. In addition, at the second trial, Reed admitted additional evidence in an attempt to impeach Simmons's testimony. As such, we conclude that the district judge acted reasonably in admitting Simmons's testimony under Rule 804(b)(1).

Having found that Simmons's testimony was properly admitted under Rule 804(b)(1), we need only briefly address Reed's Confrontation Clause argument. Reed asserts that because Simmons did not testify during the second trial, but the jury heard Simmons's testimony, Reed was denied his Sixth Amendment right to be confronted with one of the principal witnesses against him. The Confrontation Clause operates to restrict the range of admissible hearsay. "When a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.'" Roberts, 448 U.S. at 66.

Confrontation Clause requirements are met when the prosecution can show (1) necessity (or unavailability of declarant) and (2) indicia of reliability. See id. at 65. In essence, to be lawful under the Confrontation Clause, the admitted prior testimony must come from an unavailable witness and be the type of hearsay that is "marked with such trustworthiness that 'there is no material departure from the reason of the general rule.'" Id. (citation omitted). The government has shown that Simmons was unavailable and since "reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception," the second requirement, reliability, has been met as well. Id. at 66. Reed's rights under the Sixth Amendment Confrontation Clause were not violated by the admission of Simmons's prior testimony. We therefore reject Reed's argument that the district judge wrongly admitted Simmons's testimony under either Rule 804(b)(1) or the Confrontation Clause.

B.  Reed's Testimony

During Reed's second trial, the government was permitted to read into evidence the entire transcript of Reed's testimony from the first trial. Before we address the merits of Reed's challenge to the district judge's decision to admit this testimony, a review of the procedural history relevant to this issue is in order. On February 23, 1999, prior to the second trial, the government submitted a motion in limine, indicating that it wanted to introduce limited portions of Reed's testimony from the first trial. Then, on June 4, 1999, the government submitted a second motion in limine seeking to preclude Reed (assuming he would not be testifying) from offering any of his testimony from the first trial under Federal Rule of Evidence 801, which requires such testimony to be offered by a party opponent. On the morning the trial was to begin, the government withdrew its February 23, 1999 motion, and the court granted the June 4, 1999 motion. At trial and without objection, the government introduced into evidence a transcript of Reed's entire testimony from his first trial./5

Reed's prior testimony was admitted as an admission of a party opponent under Federal Rule of Evidence 801(d) (2)(A), which provides that a statement is not hearsay and may be admitted when the statement in question is offered against a party and is the party's own statement. Reed now makes two general arguments: (1) each of the statements that the government sought to include were not against his interest and (2) the district judge erred when he failed to require redaction of Reed's testimony, so that only the statements against Reed's interest remained. However, neither of these arguments were raised on the record, at trial or during sentencing. As such, on appeal, we review the district judge's decision to permit the reading of Reed's entire testimony for plain error only. See United States v. McClellan, 165 F.3d 535, 552 (7th Cir. 1999).

Reed's first argument fails because, contrary to Reed's assertion, statements admitted under Rule 801(d)(2)(A) need not be inculpatory. See United States v. McGee, 189 F.3d 626, 631-32 (7th Cir. 1999). While Reed acknowledges that admissions need not be inculpatory, he argues that to be admissible under Rule 801(d)(2)(A), an admission must be contrary to the trial position of the party. This is not the law and Reed has not persuaded us that it should be. Id. Rule 801(d)(2)(A) merely renders a statement non-hearsay if it was made by the party against whom it is offered. As we stated in McGee, the statements need neither be incriminating, inculpatory, against interest, nor otherwise

inherently damaging to the declarant's case. Rule 801(d)(2)(A) simply admits those statements made by one party, but offered as evidence by the opposing party. Therefore, the mere fact that the admitted testimony consisted of statements made by Reed, but offered by the government in its prosecution of him, makes Reed's testimony admissible under Rule 801(d)(2)(A).

Reed's second argument concerning redaction is equally unpersuasive. Reed suggests that because not all of the statements contained in Reed's prior testimony were against his interest, the court should have admitted only those portions of testimony that were expressly inculpatory and redacted all others. As explained above, Rule 801(d)(2)(A) does not require that any of the statements admitted be inculpatory. The government offered the entire transcript of Reed's testimony from the first trial against him as part of its prosecution. Therefore, admission of the entire transcript was proper under Rule 801(d)(2)(A), and redaction was not necessary. Reed was not unduly prejudiced by the reading of his former testimony, and the district judge did not commit plain error.

C.  Jury Instruction on Simmons's Cooperation

Finally, Reed argues that the instruction given to inform the jury that Simmons received a sentence reduction in exchange for his testimony against Reed was inadequate. The instruction the district judge gave to the jury closely tracks one of the Seventh Circuit Federal Criminal Jury Instructions which generally informs the jury that the witness has "received benefits from the government in connection with this case, namely _____ [fill in blank to specify benefits received]." 1 Federal Criminal Jury Instructions of the Seventh Circuit sec.3.13 (West 1999). The actual instruction presented to the jurors in this case read:

You have heard testimony from Frank Simmons, who: (a) received immunity; that is, a promise from the government that any testimony or other information he provided would not be used against him in a criminal case; (b) received benefits from the government in connection with this case, namely the promise that the government would consider his cooperation and testimony in determining whether or not to file a motion on Mr. Simmons's behalf to reduce sentence (motion of downward departure); (c) stated that he was involved in the commission of the offense as charged against the defendant. . . . You may give their testimony such weight as you feel it deserves, keeping in mind that it must be considered with great caution and great care.

According to Reed, this instruction did not tell jurors enough about the extent of the sentence reduction Simmons received after he testified in Reed's first trial. Ordinarily, we review a district court's decision concerning jury instructions under the abuse of discretion standard, see Stuart Park Assoc. Ltd. Partnership v. Ameritech Pension Trust, 51 F.3d 1319, 1323 (7th Cir. 1995), but since Reed failed to object to this instruction at trial, once again, we review for plain error. See United States v. Bardsley, 884 F.2d 1024, 1028 (7th Cir. 1989).

Before a district judge allows a jury instruction, he or she must ensure that the instruction (1) is a correct statement of the law and (2) is supported by the evidence. See United States v. Perez, 43 F.3d 1131, 1137 (7th Cir. 1994). The instruction at issue here is neither incorrect under the law nor unsupported by the evidence. The instruction is a statement of fact designed to inform the jury of a witness' potential bias and it was sufficiently detailed to serve that purpose. To tell the jurors the extent of the sentence reduction Simmons actually received after testifying against Reed would offer nothing more in the way of permitting the jurors to consider Simmons's motives at the time he testified.

We find that the instruction was adequate. "We give deference to the district court's discretion in determining the specific wording of the instructions . . . . Reversal is necessary only if the jury's comprehension of the issues is so misguided that it prejudiced the party raising error, and the complaining party bears the burden of showing prejudice." United States v. Smith, 131 F.3d 685, 688 (7th Cir. 1997) (citations omitted). Reed had ample opportunity to attack Simmons's credibility and to establish his bias on cross-examination, and the district judge gave an instruction to highlight Simmons's potential motive to lie or to exaggerate his testimony. Nothing more was needed.

II

For all the reasons set forth above, we AFFIRM the judgment of the district court.


/1 Federal Rule of Evidence 804(b)(1) reads,

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: (1) Former testimony. Testimony given as a witness at another hearing of the same or a

different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

/2 The government maintains that the trial court's decision should be reviewed for plain error only because Reed failed to preserve his theory that the government procured Simmons's unavailability and failed to make a good faith effort to get Simmons to testify. However, Reed did preserve the issue. He objected to the court's decision to admit Simmons's prior testimony.

/3 Simmons's plea agreement expressly required Simmons to "testify truthfully and completely before the grand jury and at any subsequent trials, if asked to do so."

/4 The government took pains to ensure that the court made it clear, on the record, that Simmons was being ordered to testify. "Just for the record, the United States wanted to make clear to Mr. Simmons that he is being ordered to testify by the Court." Tr. at 103.

/5 Actually, at the time the government announced its intention to read into evidence Reed's prior testimony under Rule 801(d)(2), defense counsel asked to be heard at side bar. Following the side-bar conference, the district judge informed the jury that he and the attorneys had been discussing a particular rule of evidence and that a new witness would be reading Reed's testimony from January 1999 into the record. The side-bar conference was held off-the-record. Therefore, if defense counsel did object, this court would have no way of knowing.