In the

# United States Court of Appeals

## For the Seventh Circuit

No. 04-4305

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARK P. HEATH,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 04-CR-44-C-01—**Barbara B. Crabb**, *Chief Judge.*

ARGUED JANUARY 13, 2006—DECIDED MAY 15, 2006

Before RIPPLE, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* Mark Heath was convicted of various charges relating to a scheme to defraud by using counterfeit checks to purchase automobiles from individual sellers; Heath got the vehicles and the sellers got worthless pieces of paper. Heath now raises several issues regarding his conviction, none of which are meritorious, and we therefore affirm as to his conviction. His sentence (given during the period between the Supreme Court's decisions in *Blakely* and *Booker*), however, is more troublesome. It is vacated and we remand for resentencing.

## I.  HISTORY

Heath owned a used car business in Eau Claire, Wisconsin. During the summer of 1999 Heath started to create counterfeit checks using as a template a legitimate bank check given to him as payment for a used car. In July 1999, Jerry Wendt purchased a car from Heath and eventually began doing odd jobs for Heath as well. The relationship between the two further blossomed when they began a short-lived conspiracy to defraud by purchasing cars with Heath's worthless counterfeit checks.

One of Wendt's early duties was to write out a note, dictated by Heath, and signed with the alias "Bob Meyer," which might be described as a handbook for potential members of the conspiracy.[1] This note was created in mid-September 1999 and within a matter of days it was discovered, along with thirty counterfeit checks, at the home of Heath's brother.

Over the course of three days in late September 1999, Heath and Wendt fraudulently purchased three vehicles and a trailer. The victims were discovered through newspaper advertisements and then contacted by phone. Wendt was the front man. Posing as Bob Meyer, he passed the counterfeit checks. Heath was never too far away from the sale (though he never personally met the sellers), and on

---

[1]  The note read as follows: "Just a reminder, 20-25 units for sure, 10 more if you can. As I had mentioned you will receive a 100.00 bonus for over 20 units. Please deliver to old Menard's parking lot at the west end (on 9-19-99). Use the check that fits best. The purchase price get them as cheap as possible and please remember they can write you a check for the difference. Also, please make sure to cash these check and put the cash and titles in an envelope and put under drivers seat. I will need keys under the seat also but please, not in envelope. I will see you next week. Sincerely, Bob Meyer."

one occasion when Wendt was completing a transaction at a gas station Heath was caught on tape by the station's surveillance camera. After the purchases were completed, the vehicles were driven back to Heath's used car lot.

The last vehicle purchased was an all-terrain vehicle ("ATV"). This sale netted Heath and Wendt not only the ATV, but also a personal check in the amount of $2,050 made out to Bob Meyer, which the trusting seller agreed to give Wendt to cover the difference between the counterfeit check tendered as payment for the ATV ($4,750) and the asking price ($2,700). Wendt drove the ATV to Heath's used car business and parked it.

The scheme unraveled as quickly as the counterfeit checks began to bounce. The seller of the ATV learned from his local bank that the check he had received was no good. That bank then took the prudent measure of informing its employees to be on the lookout for anyone trying to cash the seller's personal check. Two days after the sale of the ATV, Wendt and Heath pulled into the bank's drive-up window attempting to do just that. A quick-thinking teller immediately recognized the check and notified her supervisor. While the teller stalled, the president of the bank grabbed a cell phone and headed for his car to keep an eye on the suspected thieves. The teller refused to cash the check without proper identification, and Wendt and Heath drove away. The bank president followed while calling 911.

After being stopped by the police, Wendt first attempted to evade arrest by providing an alias, and then went weak at the knees and fell to the ground. Having little appetite for prison, Heath tried to eat the counterfeit checks he had on his person. Both suspects were arrested. A search of Heath uncovered a number of counterfeit checks, including one in the amount of $4,500 that had been partially eaten.

At Heath's home and used car business, officers found more evidence of the scheme: counterfeit checks, a check

printing machine, newspapers with the victim's advertisements highlighted, and a handwritten note that was nearly identical to the note transcribed by Wendt earlier.[2] The officers also discovered the ATV and the two other trucks which had been fraudulently obtained.

Wendt cut a deal requiring him to testify against Heath at trial. Chief Judge Crabb allowed Heath to impeach Wendt as to nine convictions Wendt had from the previous ten years, but refused to allow reference to several other convictions that occurred outside the ten-year window. Over Heath's objection, the government was allowed to introduce the counterfeit checks and note found at Heath's brother's home. Heath was convicted on all counts but one.

Heath was sentenced on December 17, 2004. A Presentence Investigation Report ("PSR") computed two alternative guideline calculations: one that assumed the judge must base the sentence solely on facts found by the jury; and one that assumed the judge was still allowed to make factual findings, which in this case related to a loss amount greater than that found by the jury and obstruction. If the judge were able to make factual findings (and made findings consistent with the PSR's recommendation), the resultant guideline range was 41 to 51 months' imprisonment. If the judge were bound solely by the jury's factual

---

[2] The handwritten note stated: "Just a Reminder. 20 United for Sure. 10 More If You Can Find the Time. 100.00 Bonus for Each Car over the 20. Deliver to the Old Menard's Parking Lot at the West End. Use the Check That Best Fits the Purchase Price Get Them as Cheap as Possible and Remember They Can Write You a Check for the Difference. And Make Sure to Cash These Check and Put the Cash and Titles in an Envelope and Put under Drivers Seat. And Put Keys Under Seat Also Don't Put Keys in the Envelope. See You next Week."

determinations, the PSR computed a range of 27 to 33 months.

Attempting to deal with the fallout from the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004), Judge Crabb, based upon her opinion that the Guidelines were unconstitutional and not severable, decided not to apply a sentence under the Guidelines because the jury was not asked to find facts pertaining to all possible sentencing adjustments. Instead, the judge quite presciently chose to use the Guidelines "as suggestive, but not binding" and fashion a sentence that took "into consideration the purpose of sentencing as set out in" 18 U.S.C. § 3553(a). The judge then noted that under the "applicable guidelines" Heath's sentencing range would have been 41 to 51 months, but never formally adopted the PSR or made any other factual findings. Considering his prior criminal record and the relevant aspects of his instant offense, Judge Crabb concluded that a term of 48 months' imprisonment was sufficient to punish Heath and to reflect the seriousness of his crime.

## II. ANALYSIS

Heath's appeal requires us to resolve the following four issues: whether it was error to exclude under Federal Rule of Evidence 609(b) reference to any of Wendt's convictions that were more than ten years old; whether it was error under Rule 404(b) to allow into evidence the note and counterfeit checks found at Heath's brother's home as evidence "inextricably related" to the charged crime; whether a jury instruction was plain error; and, whether resentencing is required.

We need not linger long on Heath's two challenges to evidentiary rulings, which we review for an abuse of discretion. *United States v. Gray*, 410 F.3d 338, 344 (7th Cir. 2005) (citation omitted); *United States v. Lane*, 323

F.3d 568, 585 (7th Cir. 2003) (citation omitted). As to Wendt's stale convictions, Heath starts off on the wrong foot by relying on the standard set forth in Rule 609(a) to argue that the convictions should have been admitted because their probative value outweighed any prejudice. The rule that applies is 609(b), and it requires more: a conviction older than ten years is only admissible if its probative value "supported by specific facts and circumstances *substantially outweighs* its prejudicial effect." Fed. R. Evid. 609(b) (emphasis added). Heath points to no specific facts and circumstances regarding the stale convictions except to generally describe them as pertaining to theft. What Heath ignores is that Wendt had several convictions of that type (theft and passing bad checks) within the ten-year window—all of which Heath used for impeachment. It is hard to see what probative value a few additional theft convictions would have when the jury was already presented with extensive evidence that Wendt was a thief and a cheat. In any event, it was not an abuse of discretion for the judge to rule that the probative value of those stale convictions did not substantially outweigh the prejudicial effect of presenting cumulative evidence. *See Gray*, 410 F.3d at 346 (finding no abuse of discretion for excluding stale perjury conviction where other serious felony convictions less than ten-years old existed).

Heath's second argument, brought under 404(b), attacking the admission of the evidence found at his brother's home, fares no better. That rule prohibits admission of *other* acts used to show propensity, but it does not prohibit "[e]vidence of acts that are joined with the crime itself." *United States v. Senffner*, 280 F.3d 755, 764 (7th Cir. 2002). The "inextricably intertwined doctrine" is used to distinguish between "other acts" and those acts which are part of the crime. *Id.* Acts are sufficiently connected to the charged crime to be admitted under that doctrine when, among other circumstances, "they are so blended or connected that

they incidentally involve, explain the circumstances surrounding, or tend to prove any element of, the charged crime." *Id.* The counterfeit checks and the note found at Heath's brother's home fit this criteria as they tend to prove an element of the charged crime—that Heath possessed counterfeit checks and engaged in a scheme to defraud by using those checks to purchase vehicles. The checks found at the brother's home, the ones possessed (and eaten) by Heath, and the ones used by Wendt as payment were all made from the same template. The note was also nearly identical to the one dictated by Heath to Wendt. And both the checks and note are closely connected temporally to the charged crimes as they were discovered within the same month of the criminal activity for which Heath was convicted. This evidence was properly admitted.

As to the third issue, Heath argues for the first time on appeal, after making no objection below, that there was error in a jury instruction. We review for plain error. *United States v. Castillo*, 406 F.3d 806, 819-20 (7th Cir. 2005) (citations omitted). The district court provided the following instruction, which tracks Seventh Circuit Pattern Jury Instruction 3.13, Witnesses Requiring Special Caution:

> You have heard testimony from Jerry Wendt who states that he was involved in the commission of the alleged crimes charged against the defendant and has pleaded guilty to a crime arising out of the same charges. You may give the testimony of this witness such weight as you think it deserves, keeping in mind that it must be considered with great caution and great care. Moreover, the guilty plea of this witness cannot be considered as evidence against the defendant.

Heath finds error in the district court's decision to omit from this instruction subsection (b) of 3.13, which, if included, would have told the jury that Wendt "received

benefits from the government with this case" and allowed the judge to specifically describe the benefits. Pattern Crim. Fed. Jury Instructions for the Seventh Cir. 3.13 (1998). The judge apparently thought subsection (b) inapplicable because Wendt merely *expected* to receive assistance from the government but had not actually received it at the time of trial. That reasoning may not be correct, as the point of this particular instruction is to caution the jury as to an informant's incentive to lie, and that incentive may be even greater for a witness who is hoping to curry favor with a prosecutor than for a witness who has already received a benefit. *See* Comm. Comment to Instruction 3.13 ("[T]he use of informers 'may raise serious questions of credibility. To the extent that they do, a defendant is entitled to . . . have the issues submitted to the jury with careful instructions.'" (quoting *On Lee v. United States*, 343 U.S. 747, 757 (1952))).

But, in any event, instructions specifically noting an informant's credibility problems are not required. *United States v. Cook*, 102 F.3d 249, 253 (7th Cir. 1996) ("Given the pervasiveness of reliability problems, we think it adequate, in the main, to give a general credibility instruction referring to the possibility of bias, which coupled with cross-examination and closing argument by counsel will put the subject before the jury for decision.").[3] Whether to give such an instruction is left to the discretion of the district court, *id.* at 252, and reversal on the basis of an erroneous jury instruction only occurs if the defendant can show prejudice, *United States v. Reed*, 227 F.3d 763, 771 (7th Cir. 2000) (citing *United States v. Smith*, 131 F.3d 685, 688 (7th Cir. 1997)). Heath cannot show prejudice, much less plain error, even assuming the instruction was erroneous. Both he and the government made the jury well aware of the benefits Wendt hoped to receive by testifying: the government raised Wendt's deal on direct and in closing; and defense counsel had the opportunity, which he used, to attack Wendt's

---

[3] A general credibility instruction was given to Heath's jury.

credibility on this basis during cross-examination and closing argument. Under these circumstances, reversal is not appropriate. *See Reed*, 227 F.3d at 771; *United States v. Braxton*, 877 F.2d 556, 565 (7th Cir. 1989).

Finally, we come to Heath's sentence. While Judge Crabb did a remarkable job of predicting the eventual outcome of *United States v. Booker*, 543 U.S. 220 (2005), she did not adopt the PSR or make any other factual findings. After oral argument in this case occurred, we found plain error and remanded for resentencing in a different case where this same sentencing procedure was applied. *United States v. Hawk*, 434 F.3d 959 (7th Cir. 2006) (finding plain error and remanding for resentencing where the judge treated the Guidelines as advisory but failed to adopt the PSR or make any findings of fact). In that case, we explained that "[e]ven in the post-*Booker* era, the first step in imposing a sentence is properly to calculate a Guidelines range," and that findings of fact about relevant conduct are reviewed for clear error. *Id.* at 962 (citations omitted). As in *Hawk,* we have no findings—not even an adoption of the PSR—concerning the loss amount or obstruction apparently attributed to Heath, and, therefore, "we cannot evaluate whether [the district court's] decision was proper or constituted clear error." *Id.*[4]

---

[4] Pursuant to Federal Rule of Appellate Procedure 28(j) the government submitted *United States v. Cunningham*, 429 F.3d 673 (7th Cir. 2005) in support of its position that no error occurred in sentencing, but we find it inapposite. *Cunnigham* dealt with the extent to which a district court is required to provide explanation for rejecting arguments brought under § 3553(a) that a properly computed Guidelines sentence is unreasonable, *see id.* at 676, whereas here the issue is the proper computation of the underlying Guidelines sentence.

### III.  Conclusion

For the foregoing reasons, we AFFIRM Heath's conviction and VACATE his sentence and REMAND for resentencing.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*