# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 15, 2012

No. 11-20237

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

EZUMAH CHUKWUEMEKA NDUBUISI,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:08-CR-498-3

Before REAVLEY, DAVIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Ezumah Chukwuemeka Ndubuisi appeals his conviction for conspiracy to launder funds, conspiracy to commit bank fraud, substantive bank fraud, and aggravated identity theft. He raises two evidentiary issues, arguing that the district court erroneously admitted (1) extrinsic evidence of three other fraudulent acts pursuant to FED. R. EVID. 404(b), and (2) the transcript of his

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20237

testimony from his first trial, which ended in a mistrial.  For the following reasons, we AFFIRM:

1.  The admission of evidence under Federal Rule of Evidence 404(b) is subject to "a 'heightened' abuse of discretion standard."  *United States v. Templeton*, 624 F.3d 215, 221 (5th Cir. 2010).  We follow a two-step test to determine if extrinsic evidence is admissible: "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character.  Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403." *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc).  Ndubuisi contends that purported evidence of fraud on David Weekley Homes was not admissible pursuant to Rule 404(b) because the Government failed to show the predicate facts that an offense occurred and that he was involved in the offense.  We disagree.  The evidence showed that Ndubuisi approached his longtime friend Ilona, a construction manager at David Weekley, about entering the construction business.  Ilona arranged for Ndubuisi's company to be paid for work that either was never performed or had been performed by other contractors.  Ndubuisi deposited the payments into the same bank account that was used in the instant fraud and money laundering offenses.  A postal inspector testified that an investigation of the bank account showed no transactions associated with a construction business.  Furthermore, a David Weekley representative contradicted Ndubuisi's testimony from the first trial, where Ndubuisi had claimed that he was on the David Weekley job site daily, that he used day laborers, and that David Weekley provided building materials.  Under the preponderance of the evidence standard, which is "relatively light," a reasonable jury could find that Ndubuisi committed fraud on David Weekley Homes.  *See United States v. Anderson*, 933 F.2d 1261, 1269 (5th Cir. 1991).  This fraud was committed using the same bank account as the

2

charged offenses. Because such fraud supports a conclusion that Ndubuisi also maintained a fraudulent intent in the instant case, the district court did not err by admitting the David Weekley Homes evidence. *See* Rule 404(b).

2. Ndubuisi similarly argues that the Government failed to show that an offense was committed with respect to the Citibank/Amegy Bank evidence, and that the only evidence of fraud came from Inspector Boyden's improper testimony attributing the closure of the Citibank account to fraud. Again, we disagree. Inspector Boyden also testified that the Amegy bank account had been established in the name of Charles Edwards, a person he could not locate, using a fictitious address and telephone number. He further testified that Fedrak Samvelian, who owned the Citibank account, had his identity stolen, that Samvelian did not authorize the transfer of funds from his Citibank account to the Amegy Bank account, and that Samvelian had said fraud had been committed on his account. On the same day as the transfer of funds from Citibank to Amegy Bank, money orders were purchased from the Amegy account, which the evidence showed Ndubuisi then deposited into three different bank accounts that he controlled. A reasonable jury could find from a preponderance of the evidence that Ndubuisi was involved in fraud associated with the Citibank and Amegy accounts. The evidence was probative of Ndubuisi's knowledge and intent, and the absence of mistake, given its similarity to the instant charged offenses. Both this case and the Citibank/Amegy evidence involved the same type of activity occurring during the same time period, i.e. obtaining bank accounts and access devices (debit cards) through identity fraud and the purchase of unauthorized money orders, which Ndubuisi then deposited into his own accounts. *See, e.g., United States v. Elwood*, 999 F.2d 814, 816 (5th Cir. 1993) ("In determining the probative value of extrinsic evidence, the court should consider the overall similarity between the extrinsic and charged offenses, because the probative value of the extrinsic

No. 11-20237

evidence correlates positively with its likeness to the offense charged." (internal quotation marks and citation omitted)).   The district court did not err by admitting the evidence of the Citibank/Amegy Bank activity.

3.   Next, Ndubuisi argues that the district court erroneously admitted evidence of his 1993 conviction for credit card abuse and that the Government improperly focused on his testimony from the first trial about the prior offense. The prior conviction involved Ndubuisi's attempted purchase of goods with someone else's credit card, which had been mailed to him.  The evidence was relevant to show Ndubuisi's motive, knowledge, or intent in the instant case. Both offenses involved similar elements, as both offenses were financial crimes involving stolen identities, access devices  (i.e., credit and debit cards), and the use of the mail.  *See, e.g.*, *United States v. Route*, 104 F.3d 59, 63 (5th Cir. 1997) (admission of eight year old prior bank fraud conviction proper in prosecution for bank fraud as showing intent and knowledge where defendant used similar schemes in opening bank accounts under false names and depositing stolen checks into the accounts). Ndubuisi's argument that the prior conviction was too old to be relevant is unavailing because the age of a prior conviction "is not determinative" and "does not bar its use under Rule 404." *United States v. Arnold*, 467 F.3d 880, 885 (5th Cir. 2006) (citation omitted). Moreover, we have "upheld the admission of Rule 404(b) evidence where the time period in between was as long as 15 and 18 years." *Id.* (citations omitted).  The district court did not abuse its discretion by admitting evidence of Ndubuisi's prior conviction.

4.  Ndubuisi suggests that the Government's intent to convict him solely by attacking his character was evident from the above extrinsic evidence and from the Government's cross-examination of him about his transferring money to Nigeria and his business buying and selling cars.  Because we find no error in the admission of the extrinsic evidence, this argument is without merit. Moreover, Ndubuisi does not argue that the district court erroneously allowed

No. 11-20237

the cross-examination, and any such argument is not before us. *See Brinkmann v. Dallas County Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987).

5. Finally, Ndubuisi argues that the district court erroneously admitted the transcript of his testimony from the first trial, which he contends was hearsay. He argues that his prior testimony was not an admission pursuant to FED. R. EVID. 801(d)(2)(A) because his statements were not inculpatory. Ndubuisi's prior testimony was not hearsay, however, because the record shows that the Government did not offer it for its veracity. *See United States v. Simmons*, 470 F.3d 1115, 1124 (5th Cir. 2006) ("Out-of-court statements are not hearsay when the point of the prosecutor's introducing those statements was simply to prove that the statements were made so as to establish a foundation for later showing, through other admissible evidence, that they were false." (emphasis, internal quotation marks, and citation omitted)). Moreover, recent amendments to Federal Rule of Evidence 801(d)(2)(A), which did not change the rule's application, eliminated the reference to "admissions" and confirmed that a party's own statements need not be inculpatory to be admissible under the rule. *See* FED. R. EVID. 801(d)(2)(A), Advisory Committee Notes to the 2011 Amendments; *see also United States v. Meyer*, 733 F.2d 362, 363 (5th Cir. 1984) ("*Any and all statements* of an accused person not excluded by the doctrine of confessions or the privilege against self-incrimination may be used against him as an admission and are not hearsay." (emphasis added)); *United States v. Reed*, 227 F.3d 763, 770 (7th Cir. 2000) ("[C]ontrary to Reed's assertion, statements admitted under Rule 801(d)(2)(A) need not be inculpatory. . . . Rule 801(d)(2)(A) merely renders a statement nonhearsay if it was made by the party against whom it is offered. . . . [T]he statements need neither be incriminating, inculpatory, against interest, nor otherwise inherently damaging to the declarant's case." (citation omitted)).

AFFIRMED.